**HMG/COURTLAND PROPERTIES, INC., Plaintiff,**

**v.**

**Lee GRAY, individually and a s a general partner in Martine Avenue Associates, Norman A. Fieber, individually and as a general partner in NAF Associates, Betsy Gray Saffell, individually and as a general partner in Martine Avenue Associates, NAF Associates, and the Jim Fieber Trust, Defendants.**

Civil Action No. 15789.

Court of Chancery of Delaware, New Castle County.

Submitted: Dec. 29, 1998.
Decided: Jan. 13, 1999.

Edward B. Maxwell, James P. Hughes, Jr., of Young, Conaway, Stargatt & Taylor, Wilmington; Rolin Bissell, Stephen Weaver, of Schnader, Harrison, Segal & Lewis, Philadelphia, Pennsylvania, of counsel, for Plaintiff.

Francis J. Trzuskowski, of Trzuskowski, Kipp, Kelleher & Pearce, Wilmington; Frank J. Silvestri, Jr., of Zeldes, Needle & Cooper, Bridgeport, Connecticut, of counsel, for Defendants Norman A. Fieber, NAF Associates, and the Jim Fieber Trust.

Edward M. McNally, of Morris, James, Hitchens & Williams, Wilmington, for Defendants Lee Gray, Betsy Gray Saffell and Martine Avenue Associates.

## OPINION

STRINE, Vice Chancellor.

### I. *Introduction*

The plaintiff, HMG/Courtland Properties, Inc. ("HMG"), has filed a motion for leave to file an amended complaint in this action to aver facts which it believes would enable this Court to exercise jurisdiction over NAF Associates ("NAF") and James Fieber. Several of the defendants, Norman Fieber, NAF and the Jim Fieber Trust (collectively, the "Fieber Defendants"), oppose HMG's motion on the ground that the amended complaint does not allege a sufficient basis for this court to exercise personal jurisdiction over them. For the same reason, they seek dismissal of HMG's claims against NAF pursuant to

Chancery Court Rule 12(b)(2). The remaining defendants, Lee Gray ("Gray"), Martine Avenue Associates ("Martine"), and Betsy Gray Saffell ("Saffell") have not taken a position on these motions.

## II. *Background*

HMG is a publicly held real estate investment trust formed under Delaware law. It invests in income-producing commercial properties and the development of unimproved properties. The underlying action in this case arises from two real estate transactions involving two former directors of HMG, defendants Norman Fieber and Gray.

In 1986, HMG was seeking a joint venture partner to provide assistance in developing properties HMG owned. These properties were located in the northeastern United States and were used for retail stores leased by Grossman's, Inc., a home improvement chain.

HMG negotiated the sale of a joint venture interest in a number of these properties with Norman Fieber, one of its own directors. Defendant Lee Gray, another HMG director, conducted the negotiations for HMG.

One challenged transaction, the "Wallingford Transaction," was handled separately from the other properties because Norman Fieber expressed special interest in this property and because a portion of the property contained wetlands. In April 1986, James Fieber, Norman Fieber's son, purchased a two-thirds interest in the Wallingford Property from HMG as attorney and trustee for a group of investors. HMG retained the remaining one-third interest in the property. It was apparently not disclosed to HMG that Martine, a New York partnership comprised of Gray and Gray's sister, defendant Saffell, had a 20% interest in the interest being purchased by James Fieber as trustee. That is, HMG's negotiator, Gray, was on both sides of the

Wallingford Transaction and HMG didn't know it.

The second transaction HMG attacks is the "HMG–NAF Transaction." This transaction involved the sale of HMG's interest in thirty-three other Grossman's properties. The sale was to NAF. As with the Wallingford Transaction, it was not disclosed to HMG that one of NAF's general partners, Martine, was owned by defendants Gray and Saffel. Martine owned a 13.02% interest in NAF at the time of the HMG–NAF Transaction. HMG also signed an agreement with NAF establishing a joint venture to operate the Grossman's properties. The joint venture was called HMG–Fieber Associates. HMG owned 65% and NAF owned 35% of the venture.

HMG did not learn of Gray's interest in these transactions until 1996 when the real estate administrator of HMG–Fieber Associates inquired as to the individual partners of NAF for tax purposes. HMG thereafter brought this action to challenge the two transactions on the basis that they resulted from breaches of fiduciary duties by defendants Norman Fieber and Gray.

This is the second time this jurisdictional issue has been before the court. In 1997, the Fieber Defendants filed a motion to dismiss for lack of personal jurisdiction as to NAF, Martine, and the Jim Fieber Trust. On December 11, 1997, this court, per Vice Chancellor Balick, provisionally granted the motion but deferred entering an order to allow HMG to conduct discovery to determine if there were any facts to support this court's jurisdiction over these entities under 10 *Del. C.* § 3104. HMG has concluded its discovery and now seeks to amend its complaint to include additional facts which it believes support personal jurisdiction over NAF and James Fieber.[1]

The amended complaint also eliminates the Jim Fieber Trust as a defendant and adds James Fieber in its place. Discovery

---

1. The jurisdictional issue as to Martine is moot because it turns out that Martine was dissolved before this lawsuit was filed and this court has jurisdiction over its successors, Gray, as a nonresident director, and defendant Saffell, as a Delaware resident.

has shown that the Jim Fieber Trust does not exist but that James Fieber, consistent with practice in Connecticut, purchased the Wallingford property as trustee for the real purchasers-in-interest. James Fieber is a resident of Connecticut and was not originally named as a defendant in this action and he has not been served. HMG contends that its amended complaint alleges facts sufficient to establish this court's jurisdiction over him.

### III. Legal Analysis

Although Chancery Court Rule 15(a) provides that a motion for leave to amend the complaint should "be freely granted when justice so requires," HMG has been provided the opportunity to take discovery in order to develop facts supporting its contention that this court has jurisdiction over NAF and James Fieber. Trial is scheduled in this matter for three months hence. Therefore, I will grant leave to amend and deny the Fieber Defendants' motion for dismissal only if HMG has produced evidence sufficient to support the exercise of jurisdiction over NAF and James Fieber. *Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.*, Del. Ch., C.A. No. 13950, 1996 WL 189435, at *3, Allen, C. (Apr. 16, 1996) (motion to amend may be denied where the new aspects of the complaint are legally insufficient and/or where substantial prejudice to the defendants would ensue). In so determining, I will not decide conflicts of fact, but simply examine whether the evidence adduced by HMG, if unrebutted, provides a factual basis for the assertion of personal jurisdiction. *Hart Holding Co. v. Drexel Burnham Lambert, Inc.*, Del. Ch., 593 A.2d 535, 539 (1991); *Newspan, Inc. v. Hearthstone Funding Corp.*, C.A. No. 13304, 1994 WL 198721, at *1, Allen, C. (May 10, 1994).

A two-step analysis must be applied to determine whether a nonresident defendant is subject to a Delaware court's jurisdiction. *Hercules Inc. v. Leu Trust and Banking*, Del.Supr., 611 A.2d 476, 480–481 (1992). First, the court must analyze whether a Delaware statute provides for jurisdiction over the defendant. *Id.* Second, the court must determine whether subjecting the nonresident to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id.*

In this case, HMG contends that it has jurisdiction over NAF under either of the following theories: 1) NAF is the "alter ego" of defendant Norman Fieber, a defendant over whom this court has jurisdiction under 10 *Del. C.* § 3114, and that as such, NAF is subject to the jurisdiction of this court; and 2) NAF is subject to jurisdiction under 10 *Del. C.* § 3104(c)(4) because it "regularly does or solicits business, engages in any ... persistent course of conduct in ... or derives substantial revenue from services, or things used or consumed in this State." As to James Fieber, who HMG wishes to sue, HMG alleges that jurisdiction is proper as to him because as Norman Fieber's and Lee Gray's attorney and/or trustee in the challenged transactions, Norman Fieber's and Lee Gray's consent to jurisdiction under § 3114 is properly imputed to him.[2]

In large part, therefore, the disposition of these motions depends on whether the statutorily implied consent of a nonresident Delaware director to the jurisdiction of Delaware courts pursuant to 10 *Del. C.* § 3114 may be imputed to others who act as the director's alter ego or agent. For that reason, I turn to this issue first.

### A.

#### 1. This Court's Prior Ruling

Vice Chancellor Balick ruled from the bench on NAF and Jim Fieber Trust's

---

**2.** Although HMG's theories of personal jurisdiction are, shall I say, rather supple, a careful reading of HMG's three submissions on this motion reveal that HMG has not argued that James Fieber is subject to service under 10 *Del. C.* § 3104. Moreover, it has dis-

claimed reliance on the so-called conspiracy theory of personal jurisdiction, discussed later in this opinion, which can be constitutionally applied in concert with certain Delaware statutes to exert jurisdiction over a nonresident.

motions to dismiss for lack of personal jurisdiction. In his oral ruling, Vice Chancellor Balick granted their motion. As to NAF, I interpret Vice Chancellor Balick to have ruled that NAF could not be subjected to jurisdiction by virtue of imputation of Norman Fieber's implied consent under § 3114, but was—as a foreign partnership—subject to this court's jurisdiction only if § 3104 was satisfied. (12/11/97 Tr. at 92 & 94.) However, Vice Chancellor Balick stayed entry of his order of dismissal to enable HMG to show "a basis for the exercise of jurisdiction under the long arm statute." *Id.* at 94.

In ruling upon HMG's motion, therefore, I must accord due respect to Vice Chancellor Balick's prior ruling, which I believe fairly left open to HMG only the right to make further arguments under § 3104, not § 3114. I note in this regard that HMG expressly disclaimed any reliance on the alter ego test when it was before Vice Chancellor Balick. (*Id.* at 78–79.)

Instead, HMG relied upon the jurisdictional theory that if a court can obtain jurisdiction over one general partner, it has jurisdiction over the general partnership. Even if I did not agree with Vice Chancellor Balick's ruling, in these circumstances I would feel bound to abide by his prior ruling, as the law of the case, particularly in view of HMG's attempt to rely on a theory of personal jurisdiction it specifically disavowed before my predecessor. *Frank G.W. v. Carol M.W.*, Del.Supr., 457 A.2d 715, 718–719 (1983) (courtesy and comity dictate deference to ruling of predecessor judge, as does ordinary application of law of the case doctrine); *Odyssey Partners v. Fleming Co.*, Del. Ch., C.A. No. 14770, 1998 WL 155543, at *1, Lamb, V.C. (Mar. 27, 1998) ("The law of the case doctrine requires that matters previously ruled upon by the same court should be put to rest."). Moreover, for reasons I am about to set forth, I agree with Vice Chancellor Balick's decision.

**3.** The basis for that decision can be distilled to the following: the power of defendant di-

### 2. *Analysis of HMG's Argument*

Defendants Norman Fieber and Lee Gray were served and are subject to personal jurisdiction of this court in this matter by virtue of § 3114. They are not Delaware residents, nor has HMG alleged that they are subject to jurisdiction under the long-arm statute.

As a result, they are present on the basis of their statutorily implied consent to jurisdiction in Delaware "in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of a duty in such capacity ..." 10 *Del. C.* § 3114.

Section 3114 was adopted after the United States Supreme Court concluded in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) that the prior method by which Delaware had often asserted jurisdiction over nonresident directors—sequestration of their stock in the Delaware company they served—did not satisfy federal constitutional standards. In *Shaffer*, the Supreme Court implicitly suggested that Delaware might be able to protect its legitimate interest in holding directors of Delaware corporations accountable for their performance as directors by enacting a statute treating the acceptance of a directorship in a Delaware corporation as consent to jurisdiction for claims arising out of such service. 433 U.S. at 214–216 & n. 47, 97 S.Ct. 2569. In this manner, Delaware would provide notice to directors of Delaware corporations that they should expect to be subject to jurisdiction here for claims arising out of their directorial service. *Id.*

The constitutionality of § 3114 was confirmed by the Delaware Supreme Court in *Armstrong v. Pomerance*, Del.Supr., 423 A.2d 174 (1980).[3] In so ruling, the Court

rectors to act in their director capacity arises exclusively under the Delaware corporation

stressed the limited reach of § 3114 and its precise relationship to a "significant" and "substantial" state interest:

> We emphasize here that § 3114 authorizes service only in actions where directors, trustees or members of the governing body of a Delaware corporation are necessary or proper parties or where the cause of action is grounded on such individuals' breach of the fiduciary duties owed to the corporation and its owners. Thus, § 3114 authorizes jurisdiction only in actions which are inextricably bound up in Delaware law and where Delaware has a strong interest in providing a forum for redress of injuries inflicted upon or by a Delaware domiciliary, i.e., the Delaware corporation.

*Id.* at 176–77 & n. 5.

This court's interpretations of § 3114 have similarly emphasized the need to maintain a tight fit between § 3114's purpose and its application. For example, in *Hana Ranch, Inc. v. Lent,* Del. Ch., 424 A.2d 28 (1980), this court essentially read out of the statute the first clause of § 3114 providing for jurisdiction over nonresident directors in any case involving their corporation where such directors are necessary or proper parties because that clause is "so plainly ... susceptible to unconstitutional application." *In re USACafes, L.P. Litigation,* Del. Ch., 600 A.2d 43, 53 (1991).

As a result, § 3114 has been interpreted to provide personal jurisdiction over nonresident directors only in connection with suits directed against them for acts performed in their directorial capacities. *Hana Ranch,* 424 A.2d at 30–31; *see also Istituto Bancario Italiano SpA v. Hunter Eng'g Co.,* Del.Supr., 449 A.2d 210, 228 (1982) (following *Hana Ranch* ).

■ HMG's suit against Norman Fieber and Lee Gray fits comfortably within this narrow construction because it alleges that they breached fiduciary obligations they owed to HMG as members of its board of directors. What fits less comfortably within a careful construction of § 3114 is HMG's theory that their implied consent to defend official capacity lawsuits here can be imputed to persons allegedly controlled by them—either as their so-called alter egos or agents. I believe that this theory has no basis in the language of § 3114 and little to commend it as Delaware public policy.[4]

Section 3114 is devoid of any expression of intent by the General Assembly to enable service upon those persons who can be proven to be "alter egos" or "agents" of Delaware directors. This is unsurprising given the compelling importance of § 3114's specific purpose: to put in place in the wake of *Shaffer* a constitutional

laws; defendant directors avail themselves of important privileges and legal powers and protections when they accept office as directors of Delaware corporations; by virtue of § 3114, defendant directors who accept such privileges are put on notice that they can be haled into court here to answer for breaches of Delaware corporation laws; Delaware has a legitimate interest in enforcing those laws; § 3114 is narrowly tailored to serve that legitimate interest and to compel the appearance of defendant directors only where that purpose is served; that the state's legitimate interest outweighs any burden to defendant directors; and, as a result, defendant directors served in conformity with § 3114 can fairly be expected to defend suits here. *Armstrong,* 423 A.2d at 176–177.

4. HMG has not cited any case in which a Delaware court has used the alter ego theory

of jurisdiction to impute the implied consent of a nonresident director to an out-of-state entity which was allegedly the alter ego of that director. It is true that in *Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.,* Del. Ch., C.A. No. 13950, 1996 WL 189435, Allen, C. (Apr. 16, 1996), a party attempted to rely on such an approach to establish jurisdiction over certain French subsidiaries of TLC Beatrice, a Delaware corporation. Unlike HMG, I do not find that Chancellor Allen adopted and applied this theory in denying a motion to dismiss in that matter. To the contrary, his *decision avoided discussion of that theory* and of personal jurisdiction and turned on his view that the wholly-owned French subsidiaries were "held by TLC Beatrice" and the court could fashion a remedy on that basis. *Id.* at *8–*9.

mechanism by which to hold defendant directors accountable for breaches of their official duties. That the statute is precisely tailored to achieve this compelling state interest is an evident recognition of the fact that the United Supreme Court had subtly suggested a manner in which Delaware could serve its interests in situations where defendants lack any genuine geographical connection to Delaware by means of a fictional, but carefully circumscribed statutory consent. A more sweeping statutory reaction to *Shaffer* would have been fraught with risk, if not impudent.

■ This court should be chary about reading words into a statute that the General Assembly could have easily added itself. It would not be difficult to add a sentence to § 3114 providing that: "A person who acts in concert with or as agent of a nonresident director, trustee or member of such corporation in an alleged violation of the director's, trustee's or member's duty in such capacity shall be deemed to have consented to service under this section in any action or proceeding against the director, trustee or member for that alleged violation of duty." The ease of doing so is best exemplified by the fact that Delaware's long-arm statute expressly applies to any person "who in person or through an agent" engages in specified forum-directed conduct. 10 *Del. C.* § 3104(c). But this court, in my view, is not the governmental authority with the power to add words of that nature to § 3114.

Nor would it be wise to do so. The legal fiction of implied consent embodied in § 3114 rests on one real fact: § 3114 is in the Delaware Code and provides clear notice to any reasonably informed director that accepting service as a director of a Delaware corporation brings with it an obligation to defend official capacity suits here. This fact is the underpinning of § 3114's constitutionality.

■ This fact is missing as to defendants who are alleged alter egos or agents. In the absence of express statutory language, I have difficulty conceptualizing how agents or even alter egos can be thought to have fair notice that they can be haled into court in Delaware because of their mere relationship to a nonresident director and their participation in out-of-state conduct which is later alleged to be a breach of the director's fiduciary duties.[5] Building fiction on fiction is the job of novelists writing sequels, not that of judges trying to apply the words of a statute in a common sense way. *Cf. Istituto Bancario*, 449 A.2d at 221 (in an analogous context stressing that "[c]aution must be exercised as to a fictional statutory presence of property").

In my view, there is also no public policy need to graft an elaborate alter ego or agent imputation theory of consent on to § 3114. HMG contends that the need for such a theory rests in Delaware's interest in holding those accountable who work with Delaware directors to breach the rights of Delaware corporations.

However, this public policy interest is already protected by the operation of Delaware's long-arm statute. The long-arm statute provides a basis for serving nonresident defendants who "through an agent" engage in specified forum-directed activities. 10 *Del. C.* § 3104(c). Thus

---

**5.** I suppose it can be argued that an alter ego should expect to account for itself wherever its governing ego can be sued. However, I am not convinced that even an "alter ego" has fair notice, absent language to this effect in § 3114, that its "ego's" fictional consent under § 3114 applies to it. Even human beings without split personalities can know that they are subject to personal jurisdiction in a state for some purposes and not others; in fact, § 3114 only subjects directors to Delaware's jurisdiction for official capacity claims and claims very closely related to those claims. Moreover, Delaware's interest in holding nonresident directors accountable is more than adequately protected by § 3114's plain terms since when § 3114 is properly invoked the nonresident director's personal ownership interest in any alter ego is at risk.

§ 3104, unlike § 3114, provides explicit statutory notice to out-of-state residents that they can expect to be sued here if they deploy an agent to conduct statutorily specified activities in Delaware. Delaware courts have also applied three tests of personal jurisdiction which, when coupled with the "agency provision" in § 3104, provide a statutorily and constitutionally effective basis for exerting jurisdiction over nonresidents who engage in unlawful Delaware-directed activity in concert with others.

The first involves a straightforward examination of whether the out-of-state defendant conducted business satisfying § 3104 through an agent, such as a corporate subsidiary. *See, e.g., Kahn v. Lynch Communications Systems, Inc.,* Del. Ch., C.A. No. 8748, 1989 WL 99800, at *3–*5, Berger, V.C. (Aug. 24, 1989) (examining whether Delaware subsidiary was a mere agent or instrumentality of a French parent for purposes of § 3104 and Due Process clause). In circumstances where this test is satisfied as to a corporate parent and its subsidiary, the court does not ignore the separate existence of the companies but only "will consider the parent corporation responsible for specific jurisdictional acts of the subsidiary." *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1463 (D.Del.1991); *see also Sternberg v. O'Neil,* Del.Supr., 550 A.2d 1105, 1125–1126 n. 45 (1988) (referring to this agency type of analysis as an "attribution" theory distinct from an alter ego or merger theory).

The second test applies the conspiracy theory of jurisdiction. A "strict test" for the deployment of the conspiracy theory was developed by the Delaware Supreme Court as a constitutionally sound basis to hold nonresidents accountable for conspir-acies to violate Delaware laws. *Istituto Bancario,* 449 A.2d at 225. That test does not depend on imputation to the conspirator of the legal fiction of implied consent; instead it turns on the imputation to the conspirator of meaningful activity on behalf of the conspiracy which occurred and caused effects in Delaware. *Id.*[6] The test is strict because it is designed to withstand due process challenge by basing jurisdiction on a conspiracy involving important forum-directed activity of which the conspirator had or should have had knowledge. *Id.* The conspiracy theory works well in tandem with § 3104 because a conspiracy analysis is relevant to determining whether a person has committed acts satisfying § 3104 "through an agent." *See Hercules,* 611 A.2d at 481 & 483 (applying *Istituto* test in concert with § 3104 and finding that the term agent in § 3104 encompasses co-conspirators).

The third test applies the so-called alter ego theory of personal jurisdiction. Our courts have also applied the alter ego theory rather strictly, using an analysis similar to those used in determining whether to pierce the corporate veil. Wolfe & Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery,* § 3–5(c)(1) (1998) (discussing application of alter ego doctrine by Delaware courts); *Hart Holding Co. Inc. v. Drexel Burnham Lambert, Inc.,* Del. Ch., C.A. No. 11514, 1992 WL 127567, at *10 & n. 11, Allen, C. (May 28, 1992) (stating that a broad "enterprise theory" of imputed jurisdiction "certainly does not represent the law of Delaware" and suggesting that something akin to veil piercing is necessary); *see also Sternberg,* 550 A.2d at 1125–1126 n. 45 (describing the "merger" theory of personal jurisdiction as applying when the two entities are not in fact separate at all). In

---

**6.** The full test requires a factual showing that: "1) a conspiracy to defraud existed; 2) the defendant was a member of that conspiracy; 3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; 4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and 5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy." *Istituto Bancario,* 449 A.2d at 225.

the cases in which this doctrine has been applied, Delaware courts have typically examined the record for two critical elements: 1) that the out-of-state defendant over whom jurisdiction is sought has no real separate identity from a defendant over whom jurisdiction is clear based on actual domicile or satisfaction of Delaware's long-arm statute; and 2) the existence of acts in Delaware which can be fairly imputed to the out-of-state defendant and which satisfy the long-arm statute and/or federal due process requirements. *See, e.g., Haisfield v. Cruver,* Del. Ch., C.A. No. 12430, 1994 WL 497868, at * 3, Steele, V.C. (Aug. 25, 1994) (on motion to dismiss, finding that pleading was adequate to raise *prima facie* case that Virginia corporation had no separate identity from Delaware corporation and that the Delaware corporation's satisfaction of § 3104(c)(1) could be imputed to the Virginia corporation); *Kahn v. Lynch,* 1989 WL 99800 at *3 (analyzing whether the separate existence of two French corporations should be disregarded in determining whether they were subject to personal jurisdiction in Delaware under the long-arm statute and the Due Process Clause); *O'Neal v. Huxley Dev. Corp.,* 558 F.Supp. 462 (D.Del.1983) (applying alter ego test in concert with the long-arm statute); *see also Hart Holding Co.,* 1992 WL 127567 at *2 & *10–*11 (on due process grounds, rejecting claims that California partnerships were legally indistinct from a Delaware corporate defendant so as to justify exercising personal jurisdiction over them; as a result, the court did not reach statutory issues relating to personal jurisdiction). Like the application of the *Istituto* test, the use of an alter ego test requiring the

satisfaction of these elements in concert with § 3104 is well-designed to meet due process standards, because it only hales into Delaware nonresidents who ought to expect to face suit here given their Delaware-directed behavior.

Most important, the use of an alter ego test in these circumstances is also consistent with the express language of § 3104 because it is a way of examining whether an out-of-state resident has deployed "an agent" to conduct forum-directed activity. If the entity which has engaged in the direct activity in Delaware satisfying § 3104 is no more than the alter ego of an out-of-state defendant, it is fair to conclude that the alter ego acted as the out-of-state defendant's agent in conducting those activities, thus meeting the statutory criteria permitting service.

The availability of the agency, alter ego, and conspiracy theories of jurisdiction as modes of personal jurisdiction under § 3104 cuts against the need for judicial legislation to graft those theories on to § 3114. Moreover, the application of these theories in concert with § 3104 is the most prudent way to advance Delaware's interest in holding aiders and abettors accountable while not endangering Delaware's primary mechanism for holding nonresident directors directly accountable through a constitutionally problematic extension.[7] I thereby decline the invitation to affix the alter ego theory to § 3114. In so ruling, I am aware that HMG is undoubtedly correct when it contends that the unavailability of this theory under § 3114 will mean that some participants in breaches of fiduciary duty are not subject

7. Delaware's long-arm statute is not only well-designed to withstand a federal Due Process Clause challenge, it also operates well as a practical matter in securing Delaware's interest in having its courts adjudicate cases regarding major corporate transactions, e.g., mergers, involving Delaware corporations since most of those transactions can only be consummated as a result of acts in Delaware. Since these acts in Delaware are often critical to the consummation of the very transaction

under challenge, the attribution of these acts under § 3104 to nonresidents should usually be a constitutionally sound basis for asserting personal jurisdiction over them. *See, e.g., Kahn v. Lynch,* 1989 WL 99800, at *4–*5 (foreign corporation that directly and through subsidiary participated in effectuating merger transacted business in Delaware so as to satisfy § 3104(c)(1) and Due Process Clause in case challenging that merger).

to the jurisdiction of this court. The fact that this court does not have jurisdiction over a person, however, does not insulate that person from liability for their acts in breach of Delaware law. It just limits where that person may be sued. In those instances, Delaware must rely on the courts of its sister states to uphold our laws.[8]

■ I also deny HMG's motion as to NAF on the independent ground that HMG has not produced evidence sufficient to support a finding that NAF is merely Norman Fieber's alter ego. HMG concedes that NAF is a Connecticut general partnership. In Connecticut, general partnerships may be sued in their own name. *Dorce v. Cohen*, Conn.Super., 1997 WL 219749 (Apr. 21, 1997). This is meaningful because in such a situation this court has looked to the law of the entity in determining whether the entity's separate existence is to be disregarded. *Hart Holding Co.*, 1992 WL 127567, at *10–*11. The parties have not burdened me with Connecticut authority regarding when a Connecticut general partnership may be disregarded and its existence said to be coextensive with that of its dominant general partner, and an independent search generated no authority. However, Connecticut does recognize the alter ego theory in the corporation context and appears to apply it in a similar manner as Delaware courts. *See, e.g., Zaist v. Olson*, 154 Conn. 563, 227 A.2d 552, 557 (1967) ("There must be such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal.") (citation omitted).

What authority exists under Connecticut law and under the Delaware cases applying the alter ego analysis cuts against HMG and not for it. HMG concedes that NAF's partners include several persons

not under the dominion and control of Norman Fieber. These NAF partners made significant capital contributions and received distributions of partnership profits. HMG's suggestion that NAF did not operate with the formalities of a corporation is nearly irrelevant in this context, since NAF is a Connecticut general partnership and there is no requirement in Connecticut law that NAF operate in a formalistic fashion. In order to form a partnership in Connecticut all that is needed is the "association of two or more persons to carry on as co-owners a business for profit." Conn. Gen.Stat. § 34–314 (West 1997).

Also nearly irrelevant is HMG's assertion that Norman Fieber was NAF's point man in dealing with the HMG–NAF Transaction. HMG's Chairman and Chief Executive Officer Maurice Wiener testified that HMG wanted Norman Fieber to be the "controlling factor" in NAF. (Wiener Dep. at 23) Thus, HMG knew that Norman Fieber would act in this capacity when it chose to engage in a transaction with NAF and was in fact counting on him to do so. That Norman Fieber took the lead on behalf of his partners in conducting the very business NAF was set up to conduct hardly makes NAF legally indistinct from him. Delaware courts have been very cautious about imputing even the acts of wholly-owned Delaware subsidiaries to parent corporations without an analysis of whether the corporate veil should be pierced or whether the parent corporation actively employed the subsidiary as its mere agent or instrumentality. *Red Sail Easter Limited Partners, L.P. v. Radio City Music Hall Productions, Inc.*, Del. Ch ., C.A. No. 12036, 1991 WL 129174, at *4, Allen, C. (July 10, 1991); *see also, Wolfe & Pittenger*, § 3–5(c)(3) (discussing cases). In this case where it is conceded that NAF has been capitalized by and pays profits to several partners not controlled by Norman

---

8. In this case, for example, HMG has conceded that it could most likely obtain personal jurisdiction over all the defendants it seeks to

sue in Connecticut. However, it made the tactical choice to file here because of the application of Delaware law to its claim.

Fieber in accordance with the purpose for which the partnership is established, I see no basis factually for giving less deference to NAF by concluding that it—an entity which can be sued in its own name in its home state—is indistinct from Norman Fieber.[9]

### B.

■ HMG also argues that NAF is subject to jurisdiction under 10 *Del. C.* § 3104(c)(4),[10] which provides as follows:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: ... (4) causes tortious injury in the State or outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

This section of the long arm statute allows a Delaware court to exercise jurisdiction over a nonresident defendant if any one of the three conditions is satisfied. These conditions are rigorous and require a showing of substantial and continuous activity in Delaware. *Red Sail*, 1991 WL 129174, at *3 (§ 3104(c)(4) applies only "when a defendant has had contacts with this state that are so extensive and con-

tinuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim even when that claim arose outside of this state and causes injury outside of the state"); *see also Applied Biosystems*, 772 F.Supp. at 1468 (§ 3104(c)(4) requires "that the defendant or its agent [be] generally present in the state").

HMG does not proffer any facts which come close to such a showing. HMG's attempt to obtain jurisdiction over NAF pursuant to § 3104(c)(4) by attributing Norman Fieber's and Lee Gray's actions to NAF fails for a simple reason: none of their conduct occurred in Delaware. NAF was formed in Connecticut. The HMG–NAF Transaction was consummated outside of Delaware and involved HMG–NAF in a joint venture to manage property in northeastern states. This activity outside of Delaware does not satisfy § 3104(c)(4). *See In re USACafes*, 600 A.2d at 52, n. 5 ("In my opinion, the acts or omissions of one serving as a director of a corporation cannot be said to occur within this state merely because the corporation is domiciled here."); *see also Iotex Communications, Inc. v. Defries*, Del. Ch., Cons.C.A. No. 15817, mem. op at 16–17, Lamb, V.C., 1998 WL 914265 (Dec. 21, 1998) (out-of-state conduct by a nonresident director alleged to be a breach of fiduciary duty had only a "metaphysical connection" to

**9.** I find to be beside the point the raging dispute in the record about whether NAF's partners ultimately executed the lengthy NAF formal partnership agreement or whether Norman Fieber took loans from NAF that he should not have. These are issues among the partners of NAF, and are not matters about which NAF can complain. In the case of a corporate veil piercing argument, the failure of the corporate entity to follow formalities is evidence that its owners are using it as a mere agent and that the corporation is not in fact a free-standing, accountable entity. That reasoning does not apply to a partnership, especially here. NAF has been capitalized by several partners, all of whom participate in the profits of the business along with Norman Fieber. In these circumstances, I do not believe that NAF can be said to be a mere pawn

of Norman Fieber, just because he receives his share of the profits and receives management fees.

**10.** Belatedly, *and without supporting briefing*, HMG claims that NAF is also subject to personal jurisdiction pursuant to § 3104(c)(1). Yet, HMG has pointed to no work or service in Delaware by NAF that caused the alleged harm about which HMG complains. *Red Sail*, 1991 WL 129174, at *2 (to satisfy § 3104(c)(1), "the wrong alleged [by plaintiff] must arise from" the transaction of business by the nonresident in Delaware.). Indeed, it concedes that the HMG–NAF Transaction was negotiated and consummated outside of Delaware.

1ф

Delaware and did not satisfy requirements of *Istituto* test that a substantial act or effect in furtherance of the conspiracy occur in Delaware).

■ Equally unavailing is HMG's reliance upon defendant Saffell's acts as sufficient to meet the "doing business" provision of § 3104(c)(4). HMG claims that defendant Saffell, in her capacity as a Martine partner, authorized letters, received legal documents, and made telephone calls that aided in the formation of NAF.[11] She, they suggest, conducted these activities while she was a resident of Delaware and that she also has received money in Delaware from the HMG–NAF transaction as a result of her interest in Martine and thereby NAF. Even if Saffell is considered to have acted as an NAF partner in these activities, Saffell's sporadic activities as an investing partner simply do not support a finding that NAF regularly does business in Delaware or engages in a persistent course of conduct in Delaware, or derives substantial revenue from services in Delaware. Moreover, I also disagree with HMG's contention that the fact that Saffell, a Delaware resident, received distributions from the HMG–NAF Transaction is significant as a jurisdictional matter. In analogous circumstances, this court has rejected the proposition that the passive receipt of entity income is jurisdictionally meaningful. *Hart Holding Company,* 1992 WL 127567, at *5 ("In my opinion, the passive receipt of income by defendants from debt and equity securities of Delaware companies does not constitute sufficient contacts with the state to support a finding of minimum contacts").

■ Finally, HMG relies upon as statutorily significant the fact that one of NAF's general partners, Auburn Limited Partnership, had a Delaware corporation, Vestal Corp., as its general partner. Auburn was established for the purpose of investing in NAF. HMG has made no showing that NAF conducted any substantial and consistent activity in Delaware through Vestal (or Auburn). The mere fact that a general partner of NAF had as its general partner a Delaware corporation does not come close to meeting the requirements of § 3104(c)(4). *Cf. Carlton Inv. v. TLC Beatrice Int'l Holdings, Inc.,* Del. Ch., C.A. No. 13950, 1995 WL 694397, at *11, Allen, C. (Nov. 21, 1995) (mere presence of a general partner of limited partnership in forum state is not sufficient to subject the limited partnership to forum's jurisdiction).[12]

11. At oral argument, HMG relied heavily on a letter written by Saffell to James Fieber requesting that he act as trustee on behalf of Martine in the HMG–Fieber Transaction. Although this letter might be important evidence at trial because HMG contends it was written to help cover up Gray's involvement, it is of little moment here. This letter is irrelevant to NAF since NAF was not involved in the HMG–Fieber transaction. Moreover, this isolated activity by one partner would not satisfy the criteria set forth in § 3104(c)(4); nor is there any evidence that this letter was actually mailed from Delaware. It is addressed on Martine's New York letterhead and Saffell testified that she did not become a full-time Delaware resident until three months after it was sent, before then she only visited her beach home on weekends. (HMG Ex. L; Ex. N. at pp. 5 & 10). Moreover, Saffell did not become a general partner of NAF until, at the earliest, Martine's dissolution in 1996.

12. Since § 3104(c)(4) is not satisfied I need not and do not reach the constitutional issue. However, I note that HMG's assertion that NAF should have reasonably anticipated litigation in Delaware based on real estate contracts wholly conducted outside this State is quite problematic. HMG contends that due process is satisfied because NAF entered into a business relationship with HMG, a Delaware corporation. (HMG Op. Br. at 28.) However, a contract with a resident is not enough to satisfy this requirement. *See, e.g., Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992) ("The fact that a nonresident has contracted with a resident of the forum state, is not, by itself, sufficient to justify personal jurisdiction over the nonresident."); *cf. Newspan,* 1994 WL 198721, at *6 ("Plainly, I would have thought a contract between a Delaware corporation and a nonresident to provide goods or services outside Delaware, or to transact business outside Delaware, which has been negotiated without any contacts in this state,

### IV. *Conclusion*

For the foregoing reasons, HMG's motion for leave to file an amended complaint is denied because the proposed allegations of that complaint are legally insufficient to sustain this court's exercise of personal jurisdiction over NAF or James Fieber. Accordingly, the Fieber Defendants' motion to dismiss is granted. The Fieber Defendants shall submit an implementing order.

cannot alone serve as a basis for personal jurisdiction over the nonresident for actions arising out of the contract.'').