**Bruno RUGGIERO, Francesco Ruggiero, Vinisha Agnohotri, Anmol Agnohotri, Plaintiffs,**

v.

**FUTURAGENE, PLC., a corporation organized under the laws of England and Wales (f/k/a Overnet Data, plc.), Mark Prichard, an individual, Peter Toynton, an individual, Michael Fromm, an individual, and Kannan Grant, an individual, Defendants.**

C.A. No. 2661–VCL.

Court of Chancery of Delaware.

Submitted: Nov. 13, 2007.
Decided: Feb. 1, 2008.

---

Kenneth J. Nachbar, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Leland, Paracitini, Steinberg, Matzger & Melnick, LLP, San Francisco, CA, Attorneys for the Plaintiffs.

Gregory V. Varallo, Esquire, Geoffrey G. Grivner, Esquire, Richards, Layton & Finger P.A., Wilmington, Delaware; Michael S. Poulos, Esquire, Kenneth L. Schmetterer, Esquire, Emily S. Schlesinger, Esquire, DLA Piper USA LLP, Chicago, IL, Attorneys for the Defendants.

## OPINION

LAMB, Vice Chancellor.

An Indiana corporation engaged in a stock-for-stock merger with an English corporation, which created a Delaware subsidiary to effectuate the merger. The former stockholders of the Indiana corporation who are now stockholders in the English corporation sue the English corporation and its directors for breach of the merger agreement and breach of fiduciary duties. The defendants move to dismiss seeking, primarily, dismissal of the claims against the directors of the English corporation for lack of personal jurisdiction. Because no basis on which to rest the exercise of personal jurisdiction over these individuals is either alleged or argued to exist, the motion will be granted.

## I.

The plaintiffs are some, but not all, of the former stockholders of FuturaGene, Inc., an Indiana corporation. Defendant FuturaGene, plc is organized under the laws of England and Wales. Mark Pritchard, Peter Toynton, Michael Fromm, and Kannan Grant (the "Individual Defendants") are directors and officers of FuturaGene, plc. They reside, respectively, in England, Nebraska, and Indiana.

FuturaGene, Inc.'s business plan was to assemble a portfolio of intellectual property rights in the area of agricultural biotechnology and to license these rights to others. The company built its portfolio by acquiring exclusive commercial rights from scientists and institutions. In 2004, OverNet Data, plc, an English corporation and the predecessor to FuturaGene, plc, offered to purchase FuturaGene, Inc. To that end, OverNet Data created a Delaware subsidiary called Project Greenfield Acquisition Corporation in order to effectuate the merger. Although not alleged in the complaint, it appears that Toynton, Fromm, and Grant were directors of Project Greenfield.[1]

On May 19, 2004, OverNet Data and Project Greenfield entered into a Merger Agreement with FuturaGene, Inc. and its stockholders. Under the Merger Agreement, Project Greenfield merged with and into FuturaGene, Inc., resulting in FuturaGene, Inc. becoming a wholly owned subsidiary of OverNet Data. Following the merger, OverNet Data changed its name to FuturaGene, plc.

The Merger Agreement provides that the plaintiffs would exchange their shares of FuturaGene, Inc. for approximately 10.2 million shares, or approximately 30% of the total shares outstanding, of OverNet Data. In addition, the Merger Agreement provides that the FuturaGene, Inc. stockholders could receive three additional payments, totaling up to 26 million additional

---

1. *See* Hr'g Tr. 17.

shares, if FuturaGene, plc achieved certain "milestone events." The milestone events include events such as FuturaGene, plc being granted an exclusive license over three new gene discoveries, or receiving offers from third parties to license any element of the company's intellectual property.[2] Section 7.7 of the Merger Agreement specifies Delaware as the choice of forum for suits involving the Merger Agreement, providing:

> Each of the parties hereto irrevocably consents to the exclusive jurisdiction of the State of Delaware and the federal district or state courts sitting in the State of Delaware, in connection with any matter based upon or arising out of this Agreement or the matters contemplated herein, agrees that process may be served upon them in any manner authorized by the laws of the State of Delaware for such person and waives and covenants not to assert or plead any objection which they might otherwise have to such jurisdiction and such process.

The signatories to the Merger Agreement were OverNet Data, Project Greenfield, FuturaGene, Inc., and FuturaGene, Inc.'s thirteen stockholders. All four plaintiffs and defendant Pritchard are among those thirteen stockholders.

The complaint in this matter seeks relief on seven different grounds. Counts I, II, and III allege breach of contract against all defendants, claiming that although the company has attained the milestones enumerated in the Merger Agreement, the company has refused to issue additional shares. Count IV alleges that the Individual Defendants-as directors and officers of FuturaGene, plc-have breached fiduciary duties owed to FuturaGene, plc's stockholders (including the plaintiffs) by refusing to direct the company to issue the additional shares.

Count V alleges that FuturaGene, plc has engaged in a scheme to avoid triggering the milestone events in the Merger Agreement. According to the plaintiffs, an offer from a third party to license intellectual property from any *affiliated entity* of FuturaGene, plc is not a milestone event under the Merger Agreement. To take advantage of this loophole, the plaintiffs allege, FuturaGene, plc has entered into an agreement with CBD Corporation to acquire that company in exchange for shares of FuturaGene, plc, and plans to license to CBD the intellectual property rights it obtained from FuturaGene, Inc. The plaintiffs allege that the Individual Defendants-again as directors and officers of FuturaGene, plc-have breached fiduciary duties owed to FuturaGene, plc's stockholders (including the plaintiffs) by directing the corporation to make this acquisition.

In Count VI, the plaintiffs allege that "the [Individual Defendants] ... approved the issuance of stock options to themselves...."[3] The plaintiffs contend that these option grants were not authorized by the stockholders of the company. The plaintiffs reason that control of the corporation would have shifted had FuturaGene, plc issued additional shares to the plaintiffs as required under the Merger Agreement, and the new majority would not have made the grants. The plaintiffs conclude that the option grants therefore "represent[ ] a breach of [the Individual Defendants'] fiduciary duties" owed to FuturaGene, plc's stockholders.[4] Count VII again alleges that control in the corporation would have shifted had FuturaGene,

---

**2.** *See* Merger Agmt. § 1.5(c).

**3.** Compl. ¶ 64.

**4.** *Id.* at ¶ 65.

plc issued additional shares to the plaintiffs under the Merger Agreement. Therefore, the plaintiffs assert, the grants of stock options to the Individual Defendants and FuturaGene, plc's acquisition of CBD, as well as future corporate actions, are *ultra vires*.

As relief, the plaintiffs seek a declaration that FuturaGene, plc improperly entered into the acquisition agreement with CBD, as well as a declaration that the option grants were invalid. The plaintiffs also ask the court to enjoin FuturaGene, plc from taking any further action in connection with the CBD acquisition and the issuance of the stock options. As to the contract and breach of fiduciary duty claims, the plaintiffs request that the court compel FuturaGene, plc to issue the shares allegedly owed, and order the election of a new board of directors. In the alternative, the plaintiffs seek damages in an amount equivalent to the value of the shares allegedly owed to them.

The defendants argue that Toynton, Fromm, and Grant are not parties to the Merger Agreement. Thus, according to the defendants, the Merger Agreement provides no basis to invoke this court's jurisdiction over them. The defendants also contend that Pritchard, who signed the Merger Agreement as a selling FuturaGene, Inc. stockholder, is being sued solely by virtue of his status as a corporate officer and director of FuturaGene, plc (a non-Delaware corporation), and that his signature of the Merger Agreement is therefore an insufficient basis on which to confer personal jurisdiction in this litigation. The defendants further argue that,

even as to FuturaGene, plc, Counts VI and VII should be dismissed. As the defendants point out, FuturaGene, plc consented to jurisdiction only for matters arising out of the Merger Agreement. However, Counts VI and VII, the defendants argue, are unrelated to that agreement.

## II.

■ A motion under Rule 12(b)(2) presents factual as well as legal questions. The factual question is what connection the defendant has, directly or indirectly, with the forum. The legal question is whether that connection satisfies some aspect of the long-arm statute and comports with constitutional due process concerns.[5] However, "[a] court cannot grant a motion under Rule 12(b)(2) simply by accepting the well pleaded allegations of the complaint as true, because the pleader has no obligation to plead facts that show the amenability of the defendant to service of process."[6]

■ Nonetheless, if the issue of a defendant's amenability to suit is raised by a motion, the plaintiff bears the burden of making a *prima facie* case establishing jurisdiction over the nonresident.[7] Because a plaintiff does have the evidentiary burden, and is not limited to allegations contained in the pleadings, the plaintiff may not ordinarily be precluded from reasonable discovery in meeting his or her burden. "Only where the facts alleged in the complaint make any claims of personal jurisdiction over [the] defendant frivolous, might the trial court, in the exercise of its discretionary control over the discovery

---

5. *See Hart Holding Co., Inc. v. Drexel Burnham Lambert, Inc.,* 593 A.2d 535, 538 (Del. Ch.1991).

6. *Id.* at 538.

7. *See Ryan v. Gifford,* 935 A.2d 258, 265 (Del. Ch.2007); *Amaysing Tech. Corp. v. CyberAir Commc'ns, Inc.,* No. 19890, 2005 WL 578972, at *3 (Del.Ch. Mar.3, 2005) (citing *Crescent/Mach I Partners, L.P. v. Turner,* 846 A.2d 963, 974 (Del.Ch.2000)); *Hart Holding,* 593 A.2d at 539.

process, preclude reasonable discovery in aid of establishing personal jurisdiction." [8]

▮▮ Delaware courts apply a two-step analysis to determine whether the exercise of personal jurisdiction over a nonresident is appropriate.[9] First, the court must determine whether "Delaware statutory law offers a means of exercising personal jurisdiction" over the nonresident defendant.[10] Second, after establishing a statutory basis for jurisdiction, the court must determine "whether subjecting the nonresident to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment." [11]

A. *The Court Lacks Personal Jurisdiction Over The Individual Defendants*

1. *The Individual Defendants Did Not Consent To Jurisdiction In Delaware*

▮▮ A party may expressly consent to jurisdiction by contract.[12] If a party properly consents to personal jurisdiction by contract, a minimum contacts analysis is not required.[13] Of course, the party is bound only by the terms of the consent, and such consent applies only to those causes of action that are identified in the consent provision. The consent provision in the Merger Agreement states "[e]ach of the parties hereto irrevocably consents to the exclusive jurisdiction of the State of Delaware ... in connection with any matter based upon or arising out of this Agreement or the matters contemplated herein...." Thus, FuturaGene, plc has consented to jurisdiction in Delaware to those causes of action based upon or arising from the Merger Agreement.

▮▮ Directors of a corporation, however, are not parties to a contract simply because the corporation is a party to a contract.[14] Rather, "Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually." [15] In this case, the Individual Defendants did not bind themselves individually to the Merger Agreement. Therefore, the fact that FuturaGene, plc consented to jurisdiction in Delaware for disputes arising from the Merger Agreement in no way indicates that the directors of FuturaGene, plc, including the Individual Defendants, consented to jurisdiction in Delaware.

▮▮ The plaintiffs point out that Pritchard signed the Merger Agreement in

---

**8.** *Hart Holding*, 593 A.2d at 539 (citations omitted).

**9.** *See Amaysing Tech.*, 2005 WL 578972, at *3 (citing *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992)); *see also AeroGlobal Capital Mgt., LLC v. Cirrus Ind., Inc.*, 871 A.2d 428, 437–38 (Del.2005).

**10.** *Amaysing Tech.*, 2005 WL 578972, at *3 (citing *Hart Holding*, 1992 WL 127567, at *2); *see also AeroGlobal Capital*, 871 A.2d at 437–38.

**11.** *Amaysing Tech.*, 2005 WL 578972, at *3 (citing *Hercules*, 611 A.2d at 481); *see also AeroGlobal Capital*, 871 A.2d at 437–38.

**12.** *See Capital Group Cos. v. Armour*, No. 422, 2004 WL 2521295, at *2 (Del.Ch. Oct.29, 2004); *see also Sternberg v. O'Neil*, 550 A.2d 1105, 1109 n. 4 (Del.1988) ("A party may submit to a given court's jurisdiction by contractual consent.").

**13.** *See Capital Group*, 2004 WL 2521295, at *2; *see also Sternberg*, 550 A.2d at 1109 n. 4.

**14.** *See Wallace v. Wood*, 752 A.2d 1175, 1180 (Del.Ch.1999) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract.") (citations omitted).

**15.** *Amaysing Tech.*, 2005 WL 578972, at *3 (citing *Wallace*, 752 A.2d at 1180).

his capacity as a stockholder of Futura-Gene, Inc. They argue that he therefore consented to personal jurisdiction in Delaware in this case. This argument is misguided. In Delaware, a consent to jurisdiction clause operates only as a consent to jurisdiction with respect to the claims to which it applies.[16] Here, Pritchard signed the Merger Agreement as a selling stockholder, not a corporate officer or director of FuturaGene, plc, and therefore his consent applies only to claims against him as a selling stockholder. As such, Pritchard has not consented to personal jurisdiction in this suit, in which the only claims against him are brought in his capacity as an officer or director of FuturaGene, plc.

### 2. 10 Del. C. § 3114 Does Not Provide Jurisdiction Over The Individual Defendants

██ The mere fact that some of the Individual Defendants may have served on the board of the Delaware subsidiary, Project Greenfield, does not make them amenable to service in this case. While 10 Del. C. § 3114 does authorize service over directors, trustees, or members of the governing body of a Delaware corporation, it does so only where the cause of action is based on such an individual's breach of fiduciary duty owed to the corporation and its owners.[17] In this case, there are no allegations that the directors of Project Greenfield qua directors of Project Greenfield breached any duties owed to Project Greenfield or to its corporate parent.[18] Rather, the wrongs alleged here are contract claims "unconnected with the internal affairs or corporate governance issues that Delaware law is especially concerned with." [19]

### 3. 10 Del. C. § 3104 Does Not Provide Jurisdiction Over The Individual Defendants

██ Having failed to establish that either 10 Del. C. § 3114 applies or that the Individual Defendants consented to personal jurisdiction in Delaware for the claims now brought against them, the plaintiffs must show that the Individual Defendants engaged in some Delaware-directed conduct outlined in 10 Del. C. § 3104 in order to obtain personal jurisdiction over the Individual Defendants. The plaintiffs allege that 10 Del. C. § 3104(c)(1) confers personal jurisdiction over the Individual Defendants. That section provides that "a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent ... [t]ransacts any business or performs any character of work or service

16. See id. at *3 n. 10. In Amaysing Tech., the plaintiffs sought to invoke the court's jurisdiction against defendants who signed an agreement containing a consent to jurisdiction clause. The signatories, however, did not sign that agreement in their individual capacities. The court therefore found that they were not personally bound by the agreement, and were not subject to the Delaware court's jurisdiction by virtue of their having signed it.

17. See HMG/Courtland Prop., Inc. v. Gray, 729 A.2d 300, 305 (Del.Ch.1999) (citing Hana Ranch, Inc. v. Lent, 424 A.2d 28 (Del.Ch. 1980)); see also Pestolite, Inc. v. Cordura Corp., 449 A.2d 263, 267 (Del.Super.1982)

(holding that "there is no nexus between Delaware and the acts complained of since these acts do not arise out of or relate to any breaches of duties imposed on the individual Defendants by the very laws which empowered the Defendants to act in their corporate capacities").

18. Because FuturaGene, plc is an English corporation, 10 Del. C. § 3114 is inapplicable to the Individual Defendants as directors of the English corporation. See Amaysing Tech., 2005 WL 578972, at *3 n. 10.

19. In re USACafes, L.P., 600 A.2d 43, 52 (Del. Ch.1991).

in the State." [20] Specifically, the plaintiffs argue that the Individual Defendants transacted business in Delaware by causing FuturaGene, plc to create Project Greenfield and then merge with and into FuturaGene, Inc. [21] This argument fails to establish that Delaware has personal jurisdiction over the Individual Defendants for two reasons.

First, under *Papendick v. Bosch*, FuturaGene, plc's conduct may give Delaware personal jurisdiction over claims against it arising from its acts in Delaware. [22] But a corporate director or officer of a foreign corporation cannot be haled into a Delaware court for an act of the corporation simply because the officer or director has directed the corporation to take that act. A "corporation can act only through its officers and agents." [23] Rather, the corporate officer or director must be shown to have substantial contacts in Delaware or with a nexus to Delaware having a clear relationship to the cause of action. [24] The plaintiffs have not alleged, and cannot demonstrate, that any of the Individual Defendants reside in Delaware, regularly conduct business in Delaware, or otherwise have substantial contacts with the state. The only business transacted in Delaware that the plaintiffs have identified is business transacted by FuturaGene, plc, not its directors.

In order to obtain jurisdiction over the Individual Defendants, then, the plaintiffs would have to establish that FuturaGene, plc acted as the Individual Defendants' "agent," or was their "alter ego." [25] To

---

**20.** 10 *Del. C.* § 3104(c)(1).

**21.** This argument was not made in the plaintiffs' briefs. Rather, the plaintiffs' briefs focused solely on the second-prong of the test for personal jurisdiction, *i.e.* whether the exercise of jurisdiction comported with constitutional due process. At oral argument, the plaintiffs' counsel for the first time identified a statutory basis for the exercise of personal jurisdiction over the Individual Defendants. *See* Hr'g Tr. 16–18. Normally, such an omission would be sufficient to rule in favor of the Individual Defendants. *See Emerald Partners v. Berlin*, No. 9700, 2003 WL 21003437, at *43 (Del.Ch. Apr.28, 2003) (stating "[i]t is settled Delaware law that a party waives an argument by not including it in its brief"). For the sake of completeness, however, the court considers the plaintiffs' argument.

**22.** *See* 410 A.2d 148 (Del.1979); *see also Aero-Global Capital*, 871 A.2d at 437–38, 439–40 ("[T]he ownership of a Delaware subsidiary may constitute the transaction of business under Delaware's Long Arm Statute where the underlying cause of action arises from the creation and operation of the Delaware subsidiary."). In *Papendick*, the plaintiff claimed to be entitled to a finder's fee for finding a company willing to sell a large block of stock to the foreign corporate defendant. The corporate defendant purchased the stock through a Delaware subsidiary. The court held that the defendant's conduct was sufficient to confer jurisdiction:

> We do not believe that the *International Shoe* [*Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] "minimum contact" due process standards were intended to deprive Delaware courts of jurisdiction by permitting an alien corporation to come into this State to create a Delaware corporate subsidiary for the purpose of implementing a contract under the protection of and pursuant to powers granted by the laws of Delaware, and then be heard to say, in a suit arising from the very contract which the subsidiary was created to implement, that the only contact between it and Delaware was the "mere" ownership of stock of the subsidiary.
>
> 410 A.2d at 152.

**23.** *Hessler, Inc. v. Farrell*, 226 A.2d 708, 712 (Del.1967).

**24.** *See Amaysing Tech.*, 2005 WL 578972, at *5–6 (citing *Brady v. Preferred Florist Network*, 791 A.2d 8, 14 (Del.Ch.2001)).

**25.** *See Am. Scheduling, Inc. v. Radiant Sys., Inc.*, No. 725, 2005 WL 736889, at *1 (Del.Ch. Feb. 9, 2005); *see also Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1463 (D.Del.1991).

invoke 10 *Del. C.* § 3104's rubric of "action through an agent" in this case, the plaintiffs would have to show that FuturaGene, plc was the agent of its own directors. "Such a contention would be tantamount to an argument to pierce the corporate veil." [26] Likewise, the "alter ego" theory of jurisdiction requires a finding similar to piercing the corporate veil.[27] The plaintiffs have pointed to absolutely no facts in this case that would support such action. Therefore, the plaintiffs have not established that Delaware has personal jurisdiction over the Individual Defendants in this case.

█ Second, even were FuturaGene, plc's acts attributable to the Individual Defendants, the court would still lack personal jurisdiction because 10 *Del. C.* § 3104(c)(1) provides only for specific, not general, personal jurisdiction.[28] In this case, the obligations underlying the causes of action have nothing to do with the business transacted through Project Greenfield, *viz.* creation of Project Greenfield and its subsequent merger with and into FuturaGene, Inc. Instead, the claims are based on FuturaGene, plc's later refusal to issue more shares to certain stockholders pursuant to the Merger Agreement-actions not involving its Delaware subsidiary.

Section 3104 does not provide jurisdiction over FuturaGene, plc for causes of action arising out of this later conduct.[29] Of course, FuturaGene, plc's consent to suit in Delaware found in the Merger Agreement obviates the need for such an analysis with respect to FuturaGene, plc. However, the analysis establishes that the court lacks personal jurisdiction in this case over the Individual Defendants even were FuturaGene, plc's actions attributed to them.

### 4. The Conspiracy Theory Of Personal Jurisdiction Does Not Provide Jurisdiction Over The Individual Defendants

█ Under the conspiracy theory of jurisdiction recognized by the Delaware Supreme Court in *Istituto Bancario Italiano SpA v. Hunter Engineering, Co.*:

[A] conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know

---

26. *Amaysing Tech.*, 2005 WL 578972, at *6 n. 31; *see also Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1045 n. 63, (Del.Ch.2006) (explaining that corporate agents cannot conspire with their corporate employer because doing so would "deny the presumptively independent existence of the corporation"); *Fitzgerald v. Cantor*, No. 16297, 1999 WL 182575, at *1 (Del.Ch. Mar.25, 1999) (holding that, without more, "a corporation is not the agent of a person who can direct its conduct because of his position as Chief Executive Officer of that corporation" or because the person is a controlling stockholder).

27. *See HMG/Courtland Prop., Inc. v. Gray*, 729 A.2d 300, 307 (Del.Ch.1999) (stating Delaware courts "appl[y] the alter ego theory rath-

er strictly, using an analysis similar to those used in determining whether to pierce the corporate veil")

28. Section 3104(j) expressly requires that where § 3104 is used to establish personal jurisdiction, the wrong alleged must arise from the acts enumerated in § 3104. *See also HMG/Courtland Prop.*, 729 A.2d at 310 n. 10.

29. *See Red Sail Easter, Ltd. Partners, L.P. v. Radio City Music Hall Prod., Inc.*, No. 12036, 1991 WL 129174, at *1 (Del.Ch. July 10, 1991) (dismissing the complaint for lack of personal jurisdiction because "[n]either the formation nor the merger of any of those corporations constitute any part of the facts alleged in the complaint as a wrong").

of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[30] All five of the delineated elements must be satisfied in order to establish personal jurisdiction under the conspiracy theory.

■ In this case, the plaintiffs have not alleged or established the existence of any conspiracy to defraud involving any act taken in Delaware. Although the plaintiffs do allege that the Individual Defendants conspired to acquire CBD in order to prevent triggering milestone events, the only act alleged to have ever occurred in Delaware is the creation, brief use, and extinguishment of Project Greenfield in the merger. These acts could not have been "in furtherance" of the conspiracy here alleged because the alleged conspiracy did not yet exist at the time the acts involving Project Greenfield were taken. Because the plaintiffs identify no other conspiracy to defraud, the conspiracy theory of personal jurisdiction does not provide a basis on which this court can assert personal jurisdiction over the Individual Defendants.

### 5. *The Court Does Not Have Pendent Jurisdiction Over The Individual Defendants*

■ The plaintiffs also contend that the court may exercise "pendent jurisdiction" over the Individual Defendants. In support, the plaintiffs confusingly cite to a case from the United States District Court for the Northern District of Illinois that deals with whether federal courts may resolve state claims found in a plaintiff's complaint if the court has personal jurisdiction over a defendant for federal claims.[31] The plaintiffs most likely intend to assert a somewhat similar concept known in Delaware law, which holds that "once a valid claim has been brought and personal jurisdiction established over a party defending a proper claim, whether for breach of a fiduciary duty or a contract-based duty ... Delaware courts are justified in asserting personal jurisdiction over the defending party where the subject matter of the claim is 'sufficiently related' to the plaintiff's independent claims." [32]

Under this concept, however, the court must first have personal jurisdiction over the Individual Defendants on one claim before asserting jurisdiction over them on another claim. As already discussed, the court lacks personal jurisdiction over the Individual Defendants for any claims whatsoever, rendering any theory of ancillary or pendent jurisdiction inapposite. Therefore, all counts will be dismissed as to the Individual Defendants.[33]

### B. *The Court Lacks Personal Jurisdiction Over FuturaGene, plc As To Counts VI And VII*

■ Not only does the court lack personal jurisdiction over the Individual De-

---

**30.** 449 A.2d 210, 225 (Del.1982).

**31.** *See Rice v. Nova Biomedical Corp.,* 763 F.Supp. 961, 966 (N.D.Ill.1991).

**32.** *Fitzgerald v. Chandler,* No. 15689, 1999 WL 1022065, at *4 (Del.Ch. Oct.14, 1999); *see also Manchester v. Narragansett Capital, Inc.,* No. 10822, 1989 WL 125190, at *7 (Del. Ch. Oct.19, 1989) (citing *Park Oil, Inc. v. Getty Ref. & Mktg., Co.,* 407 A.2d 533 (Del. 1979)).

**33.** Because the plaintiffs have failed to establish a statutory basis for exercising personal jurisdiction over the Individual Defendants, "it is not necessary to address whether subjecting them to jurisdiction in Delaware would violate the Due Process Clause of the Fourteenth Amendment." *Amaysing Tech.,* 2005 WL 578972, at *8 n. 46.

fendants as to all counts, but the court also lacks or will not assert personal jurisdiction over FuturaGene, plc as to Counts VI and VII. In Count VI of the complaint, the plaintiffs ask the court to invalidate the Individual Defendants' grants of stock options to themselves because the grants represent a breach of the fiduciary duties the Individual Defendants owe to FuturaGene, plc stockholders. The plaintiffs assert the grants represent a breach of fiduciary duty because the grants will dilute the value of FuturaGene, plc shares the plaintiffs now hold, and are allegedly owed under the Merger Agreement.

In Count VII, the plaintiffs seek declaratory and injunctive relief against FuturaGene, plc with respect to both the option grants and the acquisition agreement between FuturaGene, plc and CBD. The plaintiffs argue that had they received the additional shares they are allegedly entitled to under the Merger Agreement, control of FuturaGene, plc would have shifted and the corporation would not have undertaken the two acts. The plaintiffs reason that the acts are not the true expression of the interests of all of the shares of the corporation, and are therefore *"ultra vires."* According to the plaintiffs, FuturaGene, plc has consented to this court's personal jurisdiction over Counts VI and VII because those counts are "based upon" or "arise out of" the Merger Agreement.

Count VI clearly does not arise under the Merger Agreement. That claim seeks relief for breaches of fiduciary duty related to the diminution of value in the plaintiffs' shares through option grants. However, the Merger Agreement is entirely silent as to FuturaGene, plc's obligations to retain

the value of the plaintiffs' shares. That is, nothing in the Merger Agreement prevents FuturaGene, plc from granting stock options that might have a dilutive effect.

▉ As this court noted in *Parfi Holding AB v. Mirror Image Internet, Inc.,* where an agreement is silent as to a party's right to dilute the value of another party's shares subsequent to an agreement's consummation, "[t]he purported dilution rests on an alleged breach of duty that is more 'lasting' than the short-lived obligations bargained for in the [contract]," namely, "fiduciary duties ... rest[ing] on an independent set of rights provided for in the [relevant jurisdiction's] corporation law." [34] Count VI, then, arises under English law, and exists entirely apart from the Merger Agreement. [35] In such a circumstance, it can hardly be said that Count VI "arises under" the Merger Agreement. Count VI will be dismissed as to FuturaGene, plc.

Count VII also does not arise under the Merger Agreement for purposes of the consent to jurisdiction clause. As plaintiffs' counsel conceded at oral argument, nothing in the Merger Agreement guarantees the plaintiffs majority control of FuturaGene, plc upon issuance of the additional shares. [36] Nor does the Merger Agreement prohibit FuturaGene, plc's ability to acquire subsidiaries or transfer intellectual property to those subsidiaries. At most, the plaintiffs merely hoped that they, in combination with the remaining, unaffiliated FuturaGene, Inc. stockholders, might own a majority of the shares once the company reached certain milestone events. In short, the terms of the Merger Agree-

---

34. 817 A.2d 149, 158 (Del.2002).

35. In this case, section 7.7 of the Merger Agreement provides that "issues of corporate governance of any of the parties hereto shall be governed by their respective jurisdictions

of incorporation." FuturaGene, plc is incorporated in England and Wales, meaning English law applies.

36. *See* Hr'g Tr. 25–26.

**1138**

ment do not govern the propriety of the transactions challenged in Count VII, nor can the plaintiffs obtain relief from those transactions directly under the Merger Agreement through a breach of contract claim.

■ It is not enough to argue that Count VII arises under the Merger Agreement simply because the contract dispute in this case is alleged as a factual predicate to the *ultra vires* claims in Count VII, or is a "but for" cause of those claims. While, for example, in the arbitration context a claim might be held to "arise under" a contract with an arbitration clause if breach of the contract is a factual predicate for relief on the alternate claim,[37] that result is justified by a strong legislative policy favoring arbitration.[38] There is no similarly strong policy justification for reading consent to jurisdiction clauses broadly to reach claims only tangentially related to the underlying contract. Rather, to determine whether a party to a contract submitted to the court's jurisdiction, "the express terms of the relevant provisions" govern.[39] Thus, the court interprets the plain meaning of the consent to jurisdiction provision as would an "objectively reasonable third-party observer," without the benefit of any presumptions that the terms should be read "broadly" or "narrowly." [40]

In this case, no reasonable reading of the contract as a whole leads to the conclusion that FuturaGene, plc consented to jurisdiction in Delaware over claims such as those now brought in Count VII, *i.e.* claims against an English corporation that are tangentially related to the Merger Agreement, arising years after entry into the Merger Agreement, and susceptible to no relief under the terms of the Merger Agreement. Indeed, the parties recognized the distinction between claims seeking relief under the Merger Agreement and post-merger matters of corporate governance by including the following language in section 7.7 of the Merger Agreement: "issues of corporate governance of any of the parties hereto shall be governed by their respective jurisdictions of incorporation." Thus, in this case, Count VII is not "based upon" or "arising under" the Merger Agreement, and the court lacks personal jurisdiction over FuturaGene, plc for Count VII.

■ The plaintiffs may also argue that the court should exercise ancillary personal jurisdiction over FuturaGene, plc with regard to Counts VI and VII, which rest on breach of fiduciary duty and *ultra vires* claims, because the court has personal jurisdiction over the company with regard to

**37.** *See Parfi Holding*, 817 A.2d at 155, 157 (stating fiduciary duty claims "consist of a set of rights and obligations that are independent of any contract and need be submitted to arbitration only if the claims based on fiduciary duties touch on the obligations created in the [agreement containing the arbitration clause]") (citations omitted).

**38.** *See Majkowski v. Am. Imaging Mgt. Serv., LLC*, 913 A.2d 572, 581–82 (Del.Ch.2006) (noting that it is "well settled federal policy, as well as the policy of this state, that arbitration is a favored method for resolving disputes. Accordingly, contractual arbitration clauses are generally interpreted broadly in

furtherance of that policy."); *Delta & Pine Land, Co. v. Monsanto Co.*, No. 1970, 2006 WL 1510417, at *4 n. 20 (Del.Ch. May 24, 2006) (stating "the policy in favor of arbitration requires that doubts regarding whether a claim should be arbitrated, rather than litigated, be resolved in favor of arbitration").

**39.** *Multi–Fineline Electronix, Inc. v. WBL Corp. Ltd.*, No. 2482, 2007 WL 431050, at *6 (Del.Ch. Feb.2, 2007).

**40.** *Sassano v. CIBC World Mkts. Corp.*, No. 3066, 2008 WL 152582, at *5 (Del.Ch. Jan.17, 2008) (citations omitted).

certain breach of contract claims.[41] Exercise of jurisdiction under this doctrine is entirely discretionary,[42] and the court declines to exercise its discretion. As already discussed, Counts VI and VII are not closely related to any contract claim and would require consideration of a significant number of facts wholly unrelated to those necessary to determine the breach of contract claims.[43] They also seek imposition of separate relief.[44] More importantly, the claims in Counts VI and VII are governed by English law and involve directors, officers, and stockholders of an English corporation. Obviously, Delaware courts have no strong interest in adjudicating such issues rather than deferring to English courts.[45]

## C. The Plaintiffs Are Not Entitled To Discovery

■ If the facts alleged in the complaint are insufficient to establish a plaintiff's *prima facie* case for personal jurisdiction over a defendant, the trial court often permits the plaintiff jurisdictional discovery.[46] However, "where the facts alleged in the complaint make any claims of personal jurisdiction over [the] defendant frivolous," the court may preclude discovery in aid of establishing personal jurisdiction.[47] The plaintiffs' claims of personal jurisdiction over the Individual Defendants and of personal jurisdiction over FuturaGene, plc with respect to Counts VI and VII are frivolous. Further, at oral argument, plaintiffs' counsel was unable to identify any reasonable discovery that might aid the plaintiffs in establishing personal jurisdiction.[48] Indeed, no amount of discovery would change the terms of the Merger Agreement, or create contacts between Delaware and the Individual Defendants. Therefore, the plaintiffs' request for discovery in aid of establishing personal jurisdiction in this case will be denied.

## III.

Finally, the court is not convinced that dismissing the Individual Defendants is likely to create a serious risk of inconsistent judgments. If the plaintiffs sue the Individual Defendants in England, that does nothing to prevent this court from

41. *See Capital Group*, 2004 WL 2521295, at *4 (stating "[t]his court also has discretion to exercise jurisdiction over Ritter personally under principles of ancillary jurisdiction. The court may exercise its discretion to litigate a claim for which personal jurisdiction would not otherwise exist where the claim is brought along with other claims for which jurisdiction *does exist that are sufficiently re-*lated to that claim to warrant prosecution before a single tribunal"); *see also Fitzgerald*, 1999 WL 1022065, at *4. As an aside, any confusion surrounding the plaintiffs' arguments and claims in this case is solely the result of the plaintiffs' surprisingly sloppy pleadings and briefs, which are replete with incomplete thoughts and sentences, *see* Pls.' Opp. 14, unformatted cut-and-paste jobs from Westlaw, *see id.* at 10, and little, if any, attempt at proper citation.

42. *See Capital Group*, 2004 WL 2521295, at *4.

43. *See id.* at *4.

44. *See id.*

45. Because the plaintiffs have failed to establish a statutory basis for exercising personal jurisdiction over FuturaGene, plc as to Counts VI and VII, "it is not necessary to address whether subjecting [it] to jurisdiction in Delaware would violate the Due Process Clause of the Fourteenth Amendment." *Amaysing Tech.*, 2005 WL 578972, at *8 n. 46.

46. *See Am. Scheduling*, 2005 WL 736889, at *1 (citing *Hart Holding*, 593 A.2d at 541).

47. *Hart Holding*, 593 A.2d at 539 (citations omitted).

48. *See* Hr'g Tr. 40–46.

deciding the case existing between Futura-Gene, plc and the plaintiffs. The plaintiffs' counsel conceded as much when he stated that relief in this court requires only the presence of the corporate defendant.[49]

For the reasons discussed herein, the defendants' Motion To Dismiss is GRANTED. Counts I, II, III, IV, V, VI, and VII against the Individual Defendants are DISMISSED. Counts VI and VII against FuturaGene, plc are DISMISSED. Counts IV and V were asserted only against the Individual Defendants. Therefore, only Counts I, II, and III against FuturaGene, plc remain. IT IS SO ORDERED.