# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BRIAN SHIVERS and )
MADELEINE SHIVERS )
    Plaintiffs, )
                  )     C.A. No.: S25C-05-007 RHR
                  )
    v. )
                  )
IBO, LLC d/b/a ATLANTIC DESIGN )
GROUP, a Delaware Limited Liability )
Company, STEVE BENTON, and )
MICHELLE BULLARD BENTON, )
    Defendants. )

Submitted: August 6, 2025
Decided: November 5, 2025

## MEMORANDUM OPINION

*Upon Consideration of Defendants IBO, LLC, Steve Benton, and Michelle Bullard Benton's Motion to Dismiss,*
**GRANTED in part, DENIED in part**.

Brian Shivers and Madeleine Shivers, *Plaintiffs (pro se)*.

Michael R. Smith, Esq., THE SMITH FIRM, LLC, Seaford, Delaware, *Attorney for Defendants IBO, LLC d/b/a Atlantic Design Group, Steve Benton, and Michelle Bullard Benton*.

**Robinson, J.**

Brian and Madeleine Shivers assert a breach of contract claim arising out of the purchase and construction of a new home and detached garage located in Frankford, Delaware. IBO, LLC d/b/a Atlantic Design Group's ("IBO") has moved to dismiss the Shivers' complaint on several grounds: (1) Steve Benton and Michelle Bullard Benton are improper parties to this action, (2) IBO's performance was not untimely since there was no time of the essence clause in the contracts; and (3) the Shivers' argument that IBO failed to complete the work is unfounded because of language in the contract and prior admissions. The Shivers have failed to plead sufficient facts to hold the Bentons personally liable, therefore, the Bentons' dismissal from the action is proper. IBO's remaining arguments under the motion to dismiss are ultimately questions of fact that are premature at this stage.

**FACTUAL AND PROCEDURAL BACKGROUND**

After their house was destroyed by fire, the Shivers contracted with IBO for the purchase and construction of a new home and detached garage at 38703 Newport Village Drive in Frankford, Delaware.[1] The contract for the detached garage was entered into on February 15, 2023, and the contract for the new home on March 19, 2023.[2] Both contracts contained a provision stating the approximate starting and completion dates of the projects. The detached garage construction was to begin on

---

[1] D.I. 1, Compl. at 1-2.
[2] D.I. 1, Compl., Ex. A at 2, 10.

February 15, 2023, and end on May 1, 2023.[3] The new home construction was to begin on April 1, 2023, and end on July 1, 2023.[4] Both contracts stated that change orders, weather, hazardous conditions, or other unusual physical conditions could delay these approximated dates. No time of the essence clause was included.

Although the record supplied to date does not provide much of an explanation, the construction of both projects was delayed past the approximated dates. It seems the Shivers' sense of urgency in moving in was due to factors such as their housing allowance becoming exhausted on November 14, 2023, an accrual of fees for keeping their belongings in various storage units, and the adverse impact on their business before the holidays because the Shivers were living in their business's storefront while their house was being constructed. The Shivers did not receive a certificate of occupancy for the home until on or about November 13, 2023.[5] The Shivers moved into the new home on an unspecified date thereafter.

The Shivers attended a meeting to resolve a dispute as to payment between the parties on April 30, 2024, at IBO's attorney's office.[6] There, a promissory note

---

[3] D.I. 1, Compl., Ex. A. at 2.

[4] D.I. 1, Compl., Ex. A at 10.

[5] Throughout the complaint and exhibits, the Shivers allege in some sections that they did not receive the certificate of occupancy until November 14, while in other areas they state they received it on November 13. Based on all the documents provided, it appears the certificate was received by the Shivers on November 13, 2023.

[6] D.I. 1, Compl. at 2.

was signed which was upheld and enforced by this court in a previous action between the parties.[7]

The Shivers filed this complaint on May 6, 2025, for breach of contract against IBO and the Bentons seeking $1.5 million dollars in damages.[8] IBO filed a Rule 12(b)(6) motion to dismiss on June 23, 2025.[9] The Shivers filed their response to the motion to dismiss on August 1, 2025.[10] IBO responded with a letter dated August 5 claiming that the Shivers had failed to meaningfully respond to IBO's claims and that their claims were therefore abandoned.

## THE PARTIES' CONTENTIONS

### A. The Shivers' Claims

The Shivers' claims rest primarily on two specific arguments. First, the Shivers allege in their complaint that IBO breached the contracts by failing to complete the projects by the approximate dates.[11] The Shivers claim that it took IBO four and a half months past the contracted time to obtain the certificate of occupancy.

Additionally, the Shivers claim that IBO's work was not done to completion and was still incomplete as of the date of the filing of their complaint. The Shivers

---

[7] *See IBO, LLC v. Shivers*, C.A. No. S24L-12-021 (Del. Super. Ct. Aug. 14, 2025).
[8] D.I. 1, Compl.
[9] D.I. 5, Def.'s Mot. to Dismiss.
[10] D.I. 11, Pl.'s Resp. to Mot. to Dismiss.
[11] The Shivers refer to July 1, 2023, as the "completion date" for both projects throughout their pleadings.

list various deficiencies in the construction such as poor drainage, missing gutters on the garage, and the absence of stairs to the second floor in the garage.

**B. IBO's Claims**

IBO claims that the Shivers' action should be dismissed in its entirety. Specifically, IBO alleges that the action should be dismissed because: (1) the Bentons, individually, are not proper parties to the action; (2) the Shivers' claims of untimely performance are unfounded since there was no time of the essence clause; and (3) the Shivers' claims that IBO failed to complete its contractual obligations are unfounded because of the contract language and the Shivers' prior admissions.

IBO raises multiple arguments to support these claims. To its first claim, IBO argues that although the Bentons are named as defendants in this action, the Shivers have failed to plead sufficient facts to establish individual liability against either party. IBO alleges that Michelle Bullard Benton is not referenced at all in the body of the complaint, is not a party to the contracts, and did not have any involvement with the contracts. IBO claims that although Steve Benton is referenced in the body of the complaint, such references are in respect to the claims against IBO. IBO alleges that Steve Benton was only acting as a representative of IBO at all relevant times. Finally, IBO states that if the Shivers are attempting to raise any sort of veil-piercing claim, this court lacks jurisdiction.

For its second claim, IBO alleges that the Shivers have failed to plead sufficient facts that show IBO had a contractual obligation to complete the construction by a specific date. IBO emphasizes that the dates in both construction contracts were approximate dates that were subject to change for various circumstances. IBO claims that it would have completed the projects sooner if the Shivers had not caused delays by insisting on doing some of the work themselves. IBO alleges that the contract's plain and unambiguous language establishes that there was no time of the essence clause and, therefore, construction completion was not guaranteed by the dates in the contract.

On its final claim, IBO states that the Shivers' allegations that the work was incomplete are barred based on the language of the contract and the Shivers' prior admissions. IBO highlights a provision in the contract which states the Shivers could not occupy the structures until final payment was made. Under this provision, if the Shivers were to take occupancy without payment, such actions constituted as a waiver of any defects or incomplete work. IBO further alleges that the Shivers signed a promissory note which contained an acknowledgment that IBO had completed the construction of both projects. IBO claims that because the Shivers signed this acknowledgment in the promissory note and moved into the home without final payment, such actions waive their claims for incomplete work.

**C. The Shivers' Response**

In response to IBO's first argument, the Shivers concede they are unsure of what influence Michelle Bullard Benton had over the company. The Shivers continue to make similar references to Steve Benton as they did in their complaint.

To IBO's second argument, the Shivers maintain their original assertion that IBO failed to complete the project by the contracted dates. The Shivers only reference to the time of the essence argument is to assert that if the completion dates were not of essence, payment should have also received the same leniency.

For IBO's final argument, the Shivers also maintain that the work was not completed. The Shivers did not acknowledge the clause IBO mentioned which waives defects or incomplete work if they moved into the home before final payment. The Shivers claim that their mortgage company was holding funds from the insurance company to pay IBO as work was completed. The Shivers emphasize repeatedly throughout their pleadings that if IBO had completed the projects by the contracted completion date, the insurance money would have been released to them sooner. The Shivers' only reference to the promissory note was to allege that it was fraudulently entered into under financial duress.

### STANDARD OF REVIEW

Superior Court Civil Rule 12(b)(6) allows a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted."[12] "The purpose of a

---

[12] Del. Super. Ct. Civ. R. 12(b)(6).

7

motion to dismiss is to test the sufficiency of the complaint, not to resolve disputed issues of material facts or decide the merits of the case."[13] Upon consideration of a Rule 12(b)(6) motion, this court should:

> [A]ccept all well pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as 'well pleaded' if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof.[14]

Although the pleading standard is "minimal," the court cannot accept plaintiff's conclusory allegations where no sufficient facts can substantiate them.[15]

## DISCUSSION

### A.     Defendants Steve Benton and Michelle Bullard Benton are Improper Parties to this Action.

In *Cale Johnson Construction, Inc. v. Bucher*, defendants filed a counterclaim against plaintiff construction company, the company's owner, and an employee for breach of contract, among other claims.[16] The owner and employee moved to be dismissed from the action alleging that the defendants failed to establish how they were independently liable.[17] The court found that the defendants failed to allege anything that would hold the owner and employee personally liable outside the scope

---

[13] *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. Ct. Mar. 31, 2009).
[14] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).
[15] *See id.*; *See also, CH Associates XI, LLC v. 1102 West Street, LP*, 2025 WL 671767, at *5 (Del. Super. Ct. Mar. 3, 2025).
[16] 2025 WL 635756, at *1 (Del. Super. Ct. Feb. 27, 2025).
[17] *Id.*

of their employment.[18] Further, the court emphasized that when an employee is not bound by a corporate contract individually, piercing the corporate veil is required to sue that person, and that the court lacked subject matter jurisdiction to do.[19] Likewise, in *Hughes v. Imperial Home Remodeling LLC*, the court also dismissed a party who signed a contract on behalf of a remodeling company and not in his individual capacity.[20]

Similarly, the Bentons must be dismissed from this action. The Bentons are not named parties in the contracts in dispute. Steve Benton signed the contract between IBO and the Shivers on behalf of the company, not in his individual capacity. There are no facts that have been pleaded by the Shivers that show Steve Benton intended to bind himself individually through his communications with the Shivers or other acts he took on behalf of IBO. There are also no facts alleged that could hold Michelle Bullard Benton personally liable. Because this court also lacks jurisdiction to pierce the corporate veil, the Bentons must be dismissed.

**B.    Whether IBO's Performance Under the Contract was Untimely is a Question of Fact and is Premature.**

<u>1. Time was Not of the Essence Here.</u>

---

[18] *Id.* at *3 ("Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually.")(quoting *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1132 (Del. Ch. 2008)).
[19] *Id.*
[20] 2018 WL 2264413, at *1 (Del. Super. Ct. May 17, 2018).

The contracts between the Shivers and IBO do not contain an explicit time is of the essence clause. "The law presumes contracting parties are familiar with time of the essence clauses and that they know how to make time of the essence if they so desire . . . ."[21] Time may still be of the essence if the Shivers and IBO show they intended to strictly comply with a specific time frame.[22]

While the contracts contain approximate dates for the start and end of construction, these dates alone do not establish intent to strictly comply with a certain time frame. In *HIFN, Inc. v. Intel Corp.*, the court found that merely listing dates, such as "target dates," was not enough to show the parties intended to strictly adhere to a specific time frame that would result in a material breach.[23] Similarly, the court in *Parexel International (IRL) Limited v. Xynomic Pharmaceuticals, Inc.*, found that an estimated timeline established in a contract cannot be read as a time of the essence clause.[24] Therefore, the approximate dates alone do not make time of the essence here.

When considering other surrounding circumstances, the Shivers' pleadings show a sense of urgency for the construction to be completed for various reasons, but these reasons are also not sufficient to judicially insert a time of the essence

---

[21] *HIFN, Inc. v. Intel Corp.*, 2007 WL 1309376, at *10 (Del. Ch. 2007).
[22] *Id.* at *9.
[23] *Id.* at *10 ("[T]he word 'target' itself does not connote a hard and fast deadline. It expresses an aspiration, not a deadline or a requirement.").
[24] 2021 WL 3074343, at *13 (Del. Super. Ct. July 21, 2021).

clause. The Shivers provide a plethora of information about the events leading to the contracts' formation. It appears from the record that the Shivers desired to move into the home as soon as feasible due to their increasing costs to pay for storage units and the negative impact their business faced since they had to move into their storefront temporarily. Yet, there remains a lack of information showing an intent to strictly adhere to a July 1, 2023, completion date. [25] The only date of significance that the Shivers allege was November 14, 2023, since the housing allowance exhausted on that date. The record reflects, however, that this need was met. Aside from blanket statements alleging that Steve Benton knew the importance of completing the projects by the approximate dates, the Shivers do not allege any facts to show an intent to strictly adhere to those dates.[26] Because of this lack of factual support, the court will not inject a time of the essence clause where one has not been previously agreed to.

2. Whether IBO Performed in an Unreasonable Amount of Time is a Question of Fact.

Although IBO bases its argument on the absence of a time is of the essence clause, the Shivers' argument that IBO acted untimely could still stand. A material breach may be found if it is determined that IBO took an unreasonable amount of

---

[25] *Cf. HIFN, Inc.*, 2007 WL 13093769, at *10 (finding that parties did not intend to strictly comply with a specific time frame when the work involved temporal uncertainty, parties did not meet until after first target date, and parties knew they were under a time crunch).

[26] D.I. 1, Compl., Ex. H at 4 ("Steve Benton absolutely knew how important it was to me, for him to finish this home on time.").

time past the approximate dates to perform its contractual obligations.[27] Because this question is one of fact, it is premature for this court to decide it on a motion to dismiss.[28]

**C.    Whether the Shivers Waived or Forfeited the Right to Bring Suit for Incomplete Work is a Question of Fact that is Premature for this Court to Decide.**

1. Whether the Shivers Waived the Right to Bring Claims for Incomplete Work is a Question of Fact.

Delaware "respects the right of parties to freely contract and to be able to rely on the enforceability of their agreements."[29] Certain contractual requirements or conditions may be waived, but the standard to prove waiver is "quite exacting."[30] "Waiver is the voluntary and intentional relinquishment of a known right."[31] To prove that a waiver of contractual rights have occurred, the following elements must be met: "(1) there is a requirement or condition to be waived; (2) the waiving party knew of the requirement or condition; and (3) the waiving party intended to waive that requirement or condition."[32]

---

[27] *See HIFN, Inc.*, 2007 WL 1309376, at *11.

[28] *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *4 (Del. Super. Ct. Dec. 29, 2015).

[29] *New Enterprise Associates 14, L.P. v. Rich*, 295 A.3d 520, 565 (Del. Ch. 2023)(quoting *Ascension Ins. Hldgs., LLC v. Underwood*, 2015 WL 356002, at *4 (Del. Ch. 2015)).

[30] *In re Coinmint, LLC*, 261 A.3d 867, 893 (Del. Ch. 2021).

[31] *Azadian Group, LLC v. TenX Group, LLC*, 2019 WL 6040299, at *2 (Del. Super. Ct. Nov. 13, 2019).

[32] *In re Coinmint, LLC*, 261 A.3d at 893.

Here, there is a requirement or condition that could be waived under the contract as follows:

> Article 16. ACCEPTANCE AND OCCUPANCY
> 16.2 The Owner shall not occupy the property until final payment has been received by the Contractor and a Certificate of Occupancy has been obtained.
> 16.3 Occupancy of the project by the Owner in violation of 16.2, shall constitute unconditional acceptance of the project and a waiver of any defects or uncompleted work.[33]

Based on this language, the Shivers' right to raise issues on the grounds of defective or incomplete work can be waived. It appears from the record that the Shivers moved into the home without making final payment to IBO.[34] These actions triggered the waiver provision in the contract. The clause thus creates a waivable requirement or condition that is sufficient to meet the first element.[35]

Next, the Shivers and IBO signed the contracts, which is sufficient to show that the Shivers had knowledge of the clause discussing occupancy and waiver.[36] No dispute was raised as to whether the Shivers signed either contract. Although the Shivers alleged in their response that they never received a fully executed copy of

---

[33] D.I. 1, Compl., Ex. A at 4.

[34] *See* D.I. 1, Compl., Ex. H ("We continued to pay Steve Benton $2000 a month after moving into our home and we would have continued, until the meeting of April 30. After which we paid him no more."); *See also,* Def.'s Mot. to Dismiss at 7 ("Plaintiffs have long occupied/used their completed home and detached garage, but have failed to pay IBO for its work.").

[35] *See Azadian Group, LLC*, 2019 WL 6040299, at *3 (finding that a waiver-of-defenses clause in a settlement agreement was a waivable requirement or condition).

[36] *See id.* (finding that both parties' signatures in a settlement agreement was sufficient evidence that the plaintiff had knowledge of a disputed clause).

the new home contract, they admitted to having a fully executed copy of the detached garage contract.[37] Both contracts were nearly identical and contained the same waiver clause. This fact shows that the Shivers had knowledge of the contents of the contracts which meets the second element.

The final element is not as apparent but is nonetheless for a trier of fact to decide. Much of the Shivers' complaint alleges that IBO did not complete the contracted work.[38] The Shivers allege through various exhibits in their complaint that IBO was threatening them by stating it would not allow them to move into the property.[39] The Shivers made adamant remarks in communications with IBO that they would be moving into the home. Whether the Shivers intentionally decided to waive this clause at issue by moving into the home without making final payment is a question of fact that cannot be decided on this motion to dismiss.

2. Whether a Condition Precedent Creating Disproportionate Forfeiture Exists Requires Further Factual Development.

---

[37] D.I. 11, Pl.'s Resp. to Mot. to Dismiss at 7-8 ("IBO . . . never did give to [the] Shivers a fully executed contractual agreement made by in between [the] Shivers and IBO . . . complete with all signatures has not been received by [the] Shivers to this date.") ("[The] Shivers only have the fully executed contract for the garage.").

[38] *But see* D.I. 1, Compl., Ex. H at 3 ("The house was supposed to be finished being built July 1. It actually never was completed until November 14, 2023.").

[39] D.I. 1, Compl., Ex. E at 3 ("[Y]ou are threatening to not allow us to move in and to charge us interest for the financing that you had to provide . . . [Y]ou're now refusing to do the work that you were contracted to do and threatening to not let us move into our home, because I haven't told you where we're going to get the funds to pay you.").

While Delaware law holds freedom of contract in high regard, it also disfavors a forfeiture.[40] "The non-occurrence of a condition precedent may be capable of triggering a forfeiture."[41] A condition precedent exists where clear and unambiguous language establishes "an act or event, other than a time lapse, that must exist or occur before a duty to perform something promised arises."[42] A forfeiture tends to deprive rights or property due to the nonperformance of an obligation or condition.[43] Where this issue arises, the courts analyze whether "the language clearly provides for a forfeiture."[44] If it does not, the court construes the agreement in a way to avoid causing a forfeiture.[45] If it does, however, the court "may excuse the non-occurrence of a condition that would cause a disproportionate forfeiture unless its occurrence was a material part of the agreed Exchange."[46] A materiality determination may require a fact intensive analysis that is premature on a motion to dismiss.[47] Such is the case here.

**CONCLUSION**

---

[40] *Thompson St. Cap. Partners IV, L.P. v. Sonova U.S. Hearing Instruments, LLC*, 340 A.3d 1151, 1168 (Del. 2025).
[41] *Id.*
[42] *Id.* at 1167 (citation modified).
[43] *Id.* at 1168.
[44] *Id.*
[45] *Id.*
[46] *Id.* at 1169.
[47] *See id.*

The Shivers failed to plead sufficient facts to establish personal liability against the Bentons. The Shivers have, however, pleaded sufficient facts in their complaint to survive the motion to dismiss against IBO's remaining claims regarding untimeliness and incomplete work. These matters require inquiry into questions of fact which cannot be decided at this point in the proceedings. For these reasons, the motion to dismiss the Bentons individually is **GRANTED.** The motion to dismiss the Shivers' claims for untimely performance and incomplete work is **DENIED.**

**IT IS SO ORDERED.**