# SUPERIOR COURT
# OF THE
# STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Submitted: July 10, 2025
Decided: August 5, 2025
Withdrawn and Resubmitted after Reargument:  October 2, 2025
Decided: December 19, 2025

R. Karl Hill, Esquire
James S. Green, Jr., Esquire (*argued*)
SEITZ, VAN OGTROP & GREEN, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801

Steven L. Caponi, Esquire
Matthew B. Goeller, Esquire (*argued*)
K&L GATES LLP
600 N. King Street, Suite 901
Wilmington, Delaware 19801

**RE:**   ***TFI Tutti LLC, et al. v. Sono America, Inc., et al.***
   **N23C-03-122 PRW CCLD (REF: 2024-1118-PRW)**
   Plaintiffs' Motion for Reargument
   Defendant's Motion to Dismiss

Dear Counsel:

This Letter Decision and Order resolves Plaintiffs' Motion for Reargument

(D.I. 57) and Defendant Sono International Ltd.'s Motion to Dismiss (D.I. 44).  For

the reasons explained now, Plaintiffs' Motion for Reargument is **GRANTED** and

Defendant Sono International Ltd.'s Motion to Dismiss is **DENIED**.

## I. FACTUAL BACKGROUND[1]

Mr. Choi is an experienced businessman who owns and operates multiple successful salon businesses across the United States.[2] Sono International, by contrast, is a large Korean conglomerate engaged primarily in the resort business, though it has interests in other ventures such as pet hospitals and theme parks.[3] Its attempts to establish a foothold in the U.S. had largely failed before the events giving rise to this litigation.[4]

Mr. Hwang, who spearheaded Sono International's efforts to expand into the States, cultivated a business relationship with Mr. Choi.[5] Recognizing Mr. Choi's track record and valuable connections in real estate and business, Mr. Hwang and Sono International negotiated a venture with him.[6] The parties agreed that Mr. Choi

---

[1] For the purpose of analyzing this motion to dismiss, the following facts are drawn from the Plaintiffs' Second Amended Complaint. *See Windsor I, LLC v. CW Capital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020) ("In most cases, when the Superior Court considers a 12(b)(6) motion, it limits analysis to the 'universe of facts' within the complaint and any attached documents."). Mindful that the parties have a complete understanding of and familiarity with the factual background, the Court dispenses with a fuller recounting thereof here. In addition to the facts presented here, the Court has considered the facts set forth in its previous decision to resolve the issues presented in Plaintiffs' Motion for Reargument. *Kovach v. Brandywine Innkeepers Ltd. Partnership*, 2001 WL 1198944, at *1 n.1 (Del. Super. Ct. Oct. 1, 2001).

[2] 2nd Amend. Compl., ¶ 11 (D.I. 33).

[3] *Id.*, ¶ 12, 4, Figure 1.

[4] *Id.*, ¶¶ 11−14.

[5] *Id.*, ¶¶ 12, 41−62.

[6] *Id.*, ¶ 12, 42.

would leverage his contacts to facilitate Sono's entry into the U.S. market while Sono International, through its subsidiary Sono America, would provide the necessary funding.[7]

In 2016, the parties formalized their agreement through the creation of Daemyung Tutti, LLC (the "Joint Venture Company"), a Delaware limited liability company formed to carry out the joint venture, and a Joint Venture Agreement ("JVA") was executed between TFI Tutti and Sono America.[8] The JVA included a forum selection clause in which the parties agreed that all suits "shall be brought exclusively in any State or Federal Court located in the State of Delaware, City of Wilmington."[9] For several years, the business operated successfully. But by 2020, the joint venture collapsed.[10] Plaintiffs allege that the Sono Defendants failed to honor their obligations under the JVA and diverted property for their own benefit.[11]

## II. PROCEDURAL HISTORY

Prior to this litigation, Plaintiffs filed suit in New Jersey in 2022, asserting

---

[7]   *Id.*, ¶ 41−70.

[8]   Compl., Ex. A (D.I. 1) [hereinafter "JVA"].

[9]   JVA, Art. VI.N.2 ("Consent to Exclusive Jurisdiction").

[10]   *See generally* 2nd Amend. Compl.

[11]   *See generally id.*

claims arising out of the failed joint venture.[12]  But the Plaintiffs later voluntarily dismissed that action and refiled their claims in Delaware.[13]

In Delaware, Plaintiffs filed suit asserting numerous claims, including breach of the JVA, fraud and misrepresentation, conversion, tortious interference with contractual rights, breach of the covenant of good faith and fair dealing, and equitable claims such as quantum meruit and unjust enrichment—those claims were only brought against Sono America.[14]  Sono America moved to dismiss the non-contractual claims, and the Court granted that motion leaving only the breach-of-contract claim.[15]

Plaintiffs filed a second amended complaint naming Sono America, *Sono International*, and the Joint Venture Company as defendants.[16]  Plaintiffs alleged breach of contract against Sono America and the Joint Venture Company and sought to hold Sono International liable under equitable theories including veil-piercing—

---

[12]  Letter from James S. Green, Jr., Esquire with an update on the New Jersey matter and providing a copy of the Stipulation of Voluntary Dismissal Without Prejudice filed in that same New Jersey action on July 22, 2025, Ex., ¶ 5 (D.I. 55) [hereinafter "New Jersey Sup. Ct. Voluntary Dismissal"].

[13]  *Id.*

[14]  *See generally* Compl.

[15]  D.I. 24.

[16]  2nd Amend. Compl.

along with their initial breach-of-contract claim.[17]

Sono International moved to dismiss the Second Amended Complaint,[18] and the Court granted the motion, dismissing the action against Sono International for lack of personal jurisdiction.[19] Plaintiffs requested reargument of that dismissal order.[20]

### III.  PARTIES' CONTENTIONS

Plaintiffs assert that Sono America, Sono International, and the Joint Venture Company are liable for breach of contract arising from the Joint Venture Agreement.[21] Although only TFI Tutti and Sono America signed the JVA, Plaintiffs contend that Sono International functioned as the true actor behind the venture, supplying the capital and directing operations through its subsidiary.[22] On that basis, Plaintiffs seek to hold Sono International liable under a veil-piercing and alter ego theory, arguing that in these circumstances, the corporate form shouldn't shield Sono

---

[17]  *See generally* 2ⁿᵈ Amend. Compl.  All claims have been joined together, and the undersigned designated to hear and decide those matters within the jurisdiction of the Court of Chancery Action. D.I. 41.

[18]  Sono Int'l's Op. Br. Mot. to Dismiss (D.I. 44).

[19]  D.I. 56.

[20]  D.I. 57.

[21]  *See generally* 2ⁿᵈ Amend. Compl.

[22]  *Id.*, ¶¶ 63−81.

International from responsibility for obligations undertaken through Sono America and the Joint Venture Company.[23]

Sono International, in turn, moved to dismiss and flatly denies that the Court may entertain the claims against it.[24] Sono International insists, first, that Delaware lacks personal jurisdiction: it is a Korean company with no meaningful contacts in the forum and that has never consented to suit here.[25] Second, it maintains that it cannot be held liable for breach of contract because it wasn't a party to the JVA; Sono International argues Plaintiffs' veil-piercing theory is an attempt to rewrite the bargain they struck in 2016 to force Sono International as a signatory to a contract it never signed.[26] Third, Sono International argues that any contract claim is time-barred, pointing out that the alleged breaches trace back several years.[27] Fourth, it challenges standing, contending that Mr. Choi and Floris Tutti International, Inc., have no direct rights under the JVA and therefore cannot sue upon it.[28] Finally, Sono International argues that this action is duplicative and shouldn't proceed while

---

[23]  *Id.*, ¶¶ 63−81.

[24]  Sono Int'l's Op. Br. Mot. to Dismiss, at 5−13 (D.I. 44).

[25]  *Id.*, at 13−16.

[26]  *Id.*, at 12−13.

[27]  *Id.*, at 13−15.

[28]  *Id.*, at 21−22.

related litigation remains pending in New Jersey.[29]

## IV.  APPLICABLE STANDARDS OF REVIEW

A motion to dismiss under this Court's Rule 12(b)(6) tasks the Court with weighing the complaint's allegations against the reasonable conceivability pleading standard.[30]  Thereunder, the Court accepts all of the non-movant's well-pleaded allegations as true, draws all reasonable inferences in its favor, and grants dismissal only if recovery is not possible under any reasonably conceivable set of circumstances susceptible of proof.[31]

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing a proper basis for the Court's exercise of jurisdiction over the nonresident defendant.[32]  At this stage, the

---

[29]  *Id.*, at 22−23.

[30]  *Windsor I, LLC v. CW Capital Asset Mgmt. LLC*, 238 A.3d 863, 871−72 (Del. 2020) (quoting *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)) ("The grant of a motion to dismiss is only appropriate when the 'plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.'").

[31]  All Delaware courts treat decisions under Court of Chancery and Superior Court's respective Rules 12(b)(6) interchangeably. *See In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (a Court of Chancery appeal quoting the Rule 12(b)(6) standard articulated in *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002), a Superior Court appeal); *see also CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, 2020 WL 3564622, at *9 n.65 (Del. Ch. Jun. 29, 2020) (explaining that the there is no substantive difference between the two Courts' rules nor any operative difference in the analyses engaged under them to decide a Rule 12(b)(6) motion to dismiss).

[32]  *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 727 (Del. Super. Ct. 1996).

plaintiff need only make a *prima facie* showing that jurisdiction exists, and all factual disputes and reasonable inferences are resolved in the plaintiff's favor.[33]

"Under Rule 59, a motion to alter or amend a judgment will be granted if the movant shows: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or to prevent manifest injustice."[34]  Essentially, Rule 59 applies if "the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[35]  But "[a] motion for reargument is not an opportunity for a party to rehash arguments already decided by the Court or to present new arguments not previously raised."[36]

## IV.  DISCUSSION

In its prior Order, the Court dismissed Sono International for lack of personal jurisdiction.[37]  Finding that it did indeed misapprehend the law or facts such as would have changed the outcome of that earlier decision, the Court withdraws that prior

---

[33]  *Id.*

[34]  *River Valley Ingredients, LLC, et al., v. American Proteins, Inc.*, et al., 2025 WL 3091078, at *1 (Del. Super. Ct. Nov. 5, 2025) (cleaned up).

[35]  *Bd. of Managers of the Delaware Crim. Just. Info. Sys. v. Gannett Co.*, 2003 WL 1579170, at *1 (Del. Super. Ct. Jan. 17, 2003).

[36]  *Strong v. Wells Fargo Bank*, 2013 WL 1228028, at *1 (Del. Super. Ct. Jan. 3, 2013).

[37]  D.I. 56.

order of dismissal.

In turn, the Court first addresses whether Plaintiffs have adequately established personal jurisdiction over Sono International under an alter ego theory and Delaware's long-arm statute, applying both the Rule 12(b)(2) standard and the standards governing a motion for reargument under Rule 59. It now holds that they have. The Court then considers Sono International's remaining arguments for dismissal, including whether Plaintiffs' claims are time-barred, whether Floris Tutti International and Mr. Choi have standing to enforce the Joint Venture Agreement, and whether this action is barred by the anti-claim-splitting rule.

A. **THE COURT CAN EXERCISE PERSONAL JURISDICTION OVER SONO INTERNATIONAL VIA THE ALTER EGO THEORY.**

Under 10 *Del. C.* § 3104(c), Delaware courts may exercise jurisdiction over a foreign entity if the plaintiff's cause of action arises from an act covered by Delaware's long-arm statute.[38] Delaware law provides three ways under which jurisdiction over a parent corporation can be established through a subsidiary, the first of which is "when the ownership and operation of a Delaware subsidiary constitutes a sufficient invocation of the privilege of conducting business under the

---

[38] DEL CODE ANN. tit. 10, § 3104(c) (2025).

laws of Delaware that such jurisdiction is proper under § 3104."[39]  This could be called a "direct" contact.

Regarding the second and third, Delaware courts have recognized two "indirect" bases for jurisdiction under the long-arm statute:  the agency theory and the alter ego theory.[40]  Both doctrines allow the forum contacts of one entity to be attributed to another, but only where the plaintiff can show that the entities' relationship is so close that treating them separately would be improper.[41]  Plaintiffs confirm that they aren't relying on the agency theory of jurisdiction.[42]  So, only alter ego will be analyzed.  No matter the avenue, a plaintiff must still establish that a challenging defendant's contacts with Delaware are sufficiently connected to the claims asserted in the complaint through its agent or subsidiary under § 3104 to establish indirect personal jurisdiction.[43]

---

[39]  *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *10 (Del. Ch. July 14, 2008); DEL CODE ANN. tit. 10, § 3104(c) (2025).

[40]  *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745 at *4, 7 (Del. Ch. Sept. 2, 2008).

[41]  *Sprint Nextel Corp.*, 2008 WL 2737409, at *10; *Outokumpu Eng'g Enters.*, 685 A.2d at 727−731; *Mktg. Prods. Mgmt., LLC v. HealthandBeautyDirect.com, Inc.*, 2004 WL 249581, at *3 (Del. Super. Ct. Jan. 28, 2004).

[42]  Pls.' Reply Mot. Reargument, at ¶ 8 (D.I. 61) ("For the purposes of this Motion, Plaintiffs are not relying on the agency theory of jurisdiction[.]").

[43]  *HMG/Courtland Props., Inc. v. Gray*, 729 A.2d 300, 307–08 (Del. Ch. 1999).

This is well-settled. But the novel question—the one on which the parties disagree—is what happens if the Court finds Sono America to be the alter ego of Sono International: does Sono International become bound by the JVA's Delaware forum selection clause even though it never signed the agreement? Because no squarely controlling case answers that question, the Court proceeds by returning to first principles.[44]

### 1. A finding that Sono America is the alter ego of Sono International is reasonably conceivable.

Delaware law strongly presumes that corporations are distinct legal entities. "It is only the exceptional case where a court will disregard the corporate form[.]"[45] That principle is a core policy of Delaware corporate law that forms, advances, and protects the expectations of those who deal through and with corporations.[46] The

---

[44]  *See* Mot. Reargument Hr'g Tr., at 22-23 (Pls.' Counsel: "I think I could just conclude with the main point of law on this, that under the alter ego a parent is a party to a subsidiary's contract. With the forum selection clause, you don't need to do a minimum contacts analysis." The Court: "There is no case that specifically says that. Can you think of one?" Pls.' Counsel: "We couldn't find one, either."). Defendant does cite to *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, but the Court will address that case later in its analysis. 2008 WL 4057745, at *1 (Del. Ch. Sept. 2, 2008); *see generally* Mot. Reargument Hr'g Tr.; Sono Int'l Ltd.'s Resp. Mot. Reargument (D.I. 60); Def.'s Reply Br., at 9 (D.I. 53).

[45]  *Sears, Roebuck & Co. v. Sears plc*, 744 F.Supp. 1297, 1305 (D. Del. 1990) (citing *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270−71 (D. Del. 1989)) (discussing both federal and Delaware law); *PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416 (Del. Ch. 2025); *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706−07 (Del. Ch. 2021).

[46]  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citing Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 YALE L.J. 193 (1929)) ("It is a general

alter ego doctrine provides a narrow exception for personal jurisdiction.[47]  When the corporate form is abused—when it is used to perpetrate fraud, to defeat contract rights, or otherwise to work an injustice—a court might overlook it.[48]

Determining whether the alter ego doctrine applies is a fact-intensive inquiry.[49]  Delaware courts consider whether the subsidiary was adequately capitalized, whether it remained solvent, whether corporate formalities were observed, whether funds were siphoned by the parent, and whether the subsidiary functioned merely as a facade.[50]  No single factor is dispositive—proper resort to the doctrine requires a combination of circumstances demonstrating elements of

---

principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *4 (Del. Ch. Sept. 5, 2023) (same); *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022) (quoting *Doberstein v. G-P Indus., Inc.,* 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015)) ("Veil piercing is a tough thing to plead and a tougher thing to get, and for good reason. Delaware is in the business of forming entities, and so 'Delaware public policy does not lightly disregard the[ir] separate legal existence[.]'").

[47]  *See generally Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 WL 415251, at *3−4 (Del. Ch. Mar. 4, 2004).

[48]  *Sprint Nextel Corp.*, 2008 WL 2737409, at *11 (quoting *Pauley Petroleum, Inc. v. Cont'l Oil Co.,* 239 A.2d 629, 633 (Del. 1968)) ("'[Disregard of the corporate entity] may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation . . . are involved.'").

[49]  *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008).

[50]  *Sprint Nextel Corp.*, 2008 WL 2737409, at *11 (citing *U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls, L.L.C.,*2005 WL 2093694, at *1 (Del. Ch. Mar. 30, 2005)).

injustice or unfairness.[51]

Measured against this standard, Plaintiffs' allegations are sufficient. The now-operative complaint asserts that Sono America was completely dominated and controlled by Sono International;[52] that Sono International provided funds whenever requested;[53] that all material decisions were made by Sono International;[54] that Sono America observed no separate corporate formalities;[55] that it had no independent business or financial base; and that its three employees exercised no independent decision-making authority.[56] Plaintiffs further allege that Sono International purposely left Sono America undercapitalized because it "intended to be judgment proof by deliberately leaving Sono America without capital to comply with agreed to and JVA contractual obligations, and no assets on which Plaintiffs could collect."[57]

Taken as true, these allegations describe not a functioning corporation, but a shell operating solely as an instrumentality of its parent. Delaware law doesn't

---

[51] *EBG Holdings*, 2008 WL 4057745, at *12 (citing *Pauley Petroleum*, 239 A.2d at 633).

[52] 2nd Amend. Compl., ¶ 79.

[53] *Id.*, ¶ 66.

[54] *Id.*, ¶¶ 63−68.

[55] *Id.*, ¶ 64.

[56] *Id.*, ¶ 68.

[57] Pls.' Answering Br. Mot. Dismiss, at 23 (D.I. 49).

lightly disregard corporate separateness, but it equally doesn't permit the misuse of corporate form to avoid contractual obligations. This is enough for a reasonably conceivable alter-ego claim, but the analysis does not end without a statutory hook for jurisdiction under the long-arm statute.[58]

**2. The Long-Arm requirement is met because Sono America's Delaware contacts—including the Forum Clause—are imputable to Sono International.**

"In the cases in which [alter ego] has been applied, Delaware courts have typically examined the record for . . . the existence of acts in Delaware which can be fairly imputed to the out-of-state defendant and which satisfy the long-arm statute and/or federal due process requirements."[59]

No one disputes—nor could anyone—that Sono America is subject to the jurisdiction of this Court.[60] Sono America signed the JVA. The JVA contains a Delaware forum-selection clause.[61] Parties who knowingly and voluntarily agree to a forum clause consent to personal jurisdiction.[62] Such clauses are enforceable

---

[58] *EBG Holdings*, 2008 WL 4057745, at *11.

[59] *HMG/Courtland Properties*, 729 A.2d at 307–08.

[60] *See generally* Sono Int'l's Op. Br. Mot. to Dismiss; Def.'s Reply Br.; Sono Int'l Ltd.'s Resp. Mot. Reargument.

[61] JVA, Art. VI.N.2 ("Consent to Exclusive Jurisdiction").

[62] *See Nat'l Indus. Grp. (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381, 385 (Del. 2013) (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972)) ("[T]he United States Supreme Court held that [ ] forum selection clauses are generally valid, unless the resisting party

absent evidence of unreasonableness, injustice, fraud, or overreaching.[63]   None of those are argued here.  Thus, the JVA's forum clause alone is a sufficient Delaware contact to confer jurisdiction over Sono America.  The question becomes whether the same clause—if executed by an alter-ego entity—binds the parent entity:  Sono International.

Sono International calls on *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*[64]  There, a Delaware-based LLC brought a claim in Delaware against a subsidiary and its parent, alleging breach of an LLC agreement after the subsidiary failed to reimburse the Delaware-based LLC for tax payments made on its behalf.[65]  The subsidiary and the Delaware-based LLC signed an LLC agreement where the subsidiary would invest in the Delaware-based LLC and consented to Delaware

---

can 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.' Th[e Delaware Supreme] Court recognize[s] and applie[s] that principle . . . ."); *Prime Rock Energy Capital, LLC v. Vaquero Operations, Ltd.*, 2017 WL 4856851, at * (Del. Super. Ct. Oct. 26, 2017) ("Delaware has long recognized that forum selection clauses in freely negotiated contracts subject the parties to personal jurisdiction."); *PECO Holdings Corp. v. Weil, et al.*, 2013 WL 5861982, at * (Del. Ch. Oct. 31, 2013) ("Where parties agree through a forum selection clause to litigate in a particular jurisdiction, Delaware law generally honors such agreements.").

[63]   *M/S Bremen*, 407 U.S. at 15; *Nat'l Indus. Grp. (Holding)*, 67 A.3d at 381; *Cap. Grp. Companies, Inc. v. Armour*, 2004 WL 2521295, at *3 (Del. Ch. Oct. 29, 2004) (quoting *M/S Bremen*, 407 U.S. at 15); *cf. Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 146 (2023) ("The truth is, under [US Supreme Court] precedents a variety of 'actions of the defendant' that may seem like technicalities nonetheless can "amount to a legal submission to the jurisdiction of a court.").

[64]   *See generally* Pls.' Answering Br. Mot. Dismiss, at 9 (D.I. 49).

[65]   *EBG Holdings*, 2008 WL 4057745, at *1−4.

jurisdiction.[66] But the parent did not sign the agreement. After the subsidiary failed to pay taxes, the Delaware-based LLC sought to hold the parent liable under an alter ego theory, claiming the parent used the subsidiary as a facade to avoid liability.[67] The Court of Chancery held that alter ego or agency theory applied to the parent and the subsidiary, but the Court of Chancery refused to hold that the *parent* company was subject to personal jurisdiction in Delaware because § 3104(c)'s long-arm standard[68] wasn't met:

> [T]he obligation to reimburse [the Delaware-based LLC] for tax withholdings is a collateral provision that does not significantly affect the operation of [the Delaware-based LLC] under Delaware law. Thus, the mere act of promising to reimburse [the Delaware-based LLC] for tax withholdings in the Amended LLC Agreement, and then allegedly failing to perform on that promise in relation to a payment made by the LLC more than two years after the nonresident defendant joined the LLC would not provide an adequate basis for subjecting a party to personal jurisdiction, absent its consent. . . . a foreign corporation's ownership of a Delaware subsidiary may constitute the transaction of business under Delaware's long-arm statute where the underlying cause of action arises from the creation and operation of the Delaware subsidiary, because in that instance the foreign corporation availed itself of the benefits and protections of the laws of the State of Delaware. [The Delaware-based LLC],

---

[66]   *Id.* at *5, 9 ("Each party hereto hereby irrevocably consents and agrees, for the benefit of each party, that any legal action, suit or proceeding against it with respect to its obligations . . . arising out of . . . this Agreement . . . may be brought in [a Delaware court]").

[67]   *Id.* at *1−4, 10.

[68]   *Id.* at *13−15.

however, has made no showing that it was a subsidiary of either [the subsidiary] or [parent], as that term is commonly understood, as opposed to being merely a company in which [the subsidiary] was a minority investor.[69]

Using *EBG Holdings,* Sono International argues that it cannot be subject to the JVA because it was a non-signatory.[70] Thus, says Sono International, even if the Court found it reasonably conceivable that Sono America was Sono International's alter ego, the Court still could not use alter ego to designate Delaware as the forum merely based upon the JVA. On first view, the Court agreed.[71]

But that reads *EBG Holdings* too broadly and ignores the central distinction that decision itself drew between peripheral obligations and conduct that goes to the creation, governance, and breach of a Delaware-centered enterprise. *EBG Holdings* did not adopt a rule that a parent's non-signature, standing alone, precludes personal jurisdiction. Rather, the Court of Chancery's decision there turned on the absence of Delaware-directed conduct tied to the formation or operation of a Delaware entity.[72]

---

[69] *Id.* at *15.

[70] *See generally* Def.'s Reply Br.; Sono Int'l Ltd.'s Resp. Mot. Reargument.

[71] D.I. 56.

[72] *See generally EBG Holdings*, 2008 WL 4057745, at *15. The *EBG Holdings* decision can be best viewed as a *Papendick* question; that is: can mere investment in a Delaware company give rise to personal jurisdiction? *See Papendick v. Bosch*, 410 A.2d 148, 152−54 (Del. 1979); *EBG Holdings*, 2008 WL 4057745, at *6 ("Although *Papendick* was decided in the context of

Applying that distinction here, the allegations in this case concern conduct at the core of a Delaware-centered enterprise, not a collateral or peripheral obligation of the kind at issue in *EBG Holdings*—where the parent was merely a "minority investor."[73] Plaintiffs allege that Sono International, acting through its alter ego Sono America, participated directly in the formation, operation, and breach of a Delaware joint venture.[74] The Complaint pleads that the Sono America-International "person" owned fifty percent of the Joint Venture Company, executed the Joint Venture Agreement, directed aspects of the venture's operations, intentionally breached that agreement, and affirmatively selected Delaware as the exclusive forum for resolving disputes arising from the venture.[75]

Delaware law recognizes that a single transaction can suffice for jurisdiction

---

determining Constitutional due process, Delaware courts have invoked the *Papendick* rationale to hold that the incorporation and operation of a Delaware subsidiary constitutes the transaction of business in Delaware under § 3104(c)(1)."). The question in *EBG Holdings*, put very simply, is whether participation in formation and investment was a contact for the purpose of Delaware's long-arm statute after alter ego has been found. But that isn't the *same* question here. Sono International is alleged to have more than an investment role in the Joint Venture—it had a hand in the venture's operation via Sono America and the subsequent alleged breach. Thus, the analysis goes beyond both *EBG* and *Papendick*. *See, e.g.*, *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 440 (Del. 2005) ("We acknowledge that the ownership of a Delaware subsidiary does not, without more, amount to the transaction of business under Delaware's Long Arm Statute."). But here there *is* more.

[73]   *See generally EBG Holdings*, 2008 WL 4057745, at *15.

[74]   JVA; *see generally* 2nd Amend. Compl.

[75]   JVA; *see generally* 2nd Amend. Compl.

when the claim is based on that transaction.[76] As Sono International's alter ego, all of Sono America's actions are attributable to Sono International.[77] Given all this—at least, at this preliminary step of litigation—Sono International is subject to Delaware jurisdiction under its long-arm statute.[78]

Sophisticated parties know that when they structure a Delaware joint venture and sign an agreement selecting Delaware as the forum for disputes, they are invoking Delaware's legal framework and the jurisdictional consequences that come with it. In Delaware, the corporate form cannot be used to mislead counterparties or to facilitate fraud; the law protects those who rely on the appearance of a functioning company when, in reality, it is controlled entirely by another entity.[79] At the same time, Delaware emphasizes that veil-piercing is rare and cannot be used to pull every parent company into its courts simply because its subsidiary signed a contract here—the doctrine is confined to exceptional situations where corporate separateness has

---

[76] *Kahn v. Lynch Commc'n Sys., Inc.*, 1989 WL 99800, at *4 (Del. Ch. Aug. 24, 1989) ("A single transaction is sufficient to confer jurisdiction where the claim is based on that transaction.").

[77] *See Pauley Petroleum*, 239 A.2d at 633.

[78] *HMG/Courtland Properties*, 729 A.2d 300, 308 (Del. Ch. 1999) (citing *Haisfield v. Cruver*, 1994 WL 497868, at *3 (Del. Ch. Aug. 25, 1994)); *EBG Holdings*, 2008 WL 4057745, at *11.

[79] *Sears, Roebuck & Co.*, 744 F.Supp. at 1305; *PXP Producing Co.*, 342 A.3d at 416; *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706−07 (Del. Ch. 2021).

been abused.[80]  In those situations, inequitable conduct isn't incidental but central: when a parent intentionally undercapitalizes or dominates a subsidiary to avoid obligations, Delaware will not permit the parent to hide behind the subsidiary's signature.[81]  Those are the legal principles that guide this determination and likewise meet the fairness requirement of personal jurisdiction and Delaware's long-arm provision.  Plaintiffs have met the reasonable conceivability burden they shoulder at this point.

### B.  PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED.

Sono International next argues that Plaintiffs' breach-of-contract and veil-piercing claims are barred by the statute of limitations and must therefore be dismissed.

Under Delaware law, veil piercing is not a freestanding cause of action but an equitable determination made in service of an underlying claim.[82]  It follows that veil piercing does not carry a statutory limitations period in the strict sense. As the Court of Chancery has explained: "Strictly speaking, a statute of limitations at law

---

[80]   *See generally EBG Holdings*, 2008 WL 4057745.

[81]   *Cf. id.*; *Haisfield v. Cruver*, 1994 WL 497868 (Del. Ch. Aug. 25, 1994); *HMG/Courtland Properties*, 729 A.2d 300.

[82]   *PXP Producing Co.*, 2025 WL 1779457, at *2; *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999), *aff'd*, 752 A.2d 112 (Del. 2000) (discussing other equitable principles such as laches).

does not bind a court of equity with respect to claims purely equitable in nature."[83]

But "while this Court is not specifically bound to apply the statute of limitations, 'equity follows the law and, in appropriate circumstances, applies the statute of limitations by analogy, denying relief when claims are brought after the analogous statutory period.'"[84]

Here, the underlying legal claim sounds in breach of contract. Under Delaware law, actions for breach of contract must be brought within three years.[85] But because the events arose in New Jersey, Delaware's borrowing statute requires use of the shorter of Delaware or New Jersey's limitations period.[86] New Jersey provides six years for contract claims, so Delaware's shorter three-year period governs.[87] Defendants argue that this limitations period expired before Plaintiffs formally asserted claims against Sono International and that dismissal must therefore

---

[83] *PXP Producing Co.*, 2025 WL 1779457, at *2, n.22 (quoting Donald J. Wolfe, Jr. & Michael A. Pittenger, 2 CORP. & COMMERCIAL PRACTICE IN DELAWARE COURT OF CHANCERY § 15.07[a], at 15–80 (2024)).

[84] *Fike*, 754 A.2d at 260 (quoting *Merck & Co. v. SmithKline Beecham Pharms. Co.*, 1999 WL 669354, at *42 (Del. Ch. Aug. 5, 1999)).

[85] DEL. CODE ANN. tit. 10, § 8106 (2025); *Lavender v. Koenig*, 2017 WL 443696, at *3 (Del. Super. Ct. Feb. 1, 2017).

[86] DEL. CODE ANN. tit. 10, § 8121 (2025).

[87] *Id.*; *compare id* at § 8106 *with N.J. Stat. Ann.* § 2A:14-1 (West 2025).

follow.[88]

Delaware courts recognize certain tolling doctrines that suspend the running of limitations periods until a plaintiff discovers, or reasonably should have discovered, the facts giving rise to the claim.[89]   These may apply where material facts have been fraudulently concealed, where the injury is inherently unknowable, or where a plaintiff reasonably relies on a fiduciary engaged in self-dealing.[90] Beyond these established categories, the our Supreme Court has made clear that statutes of limitation may yield in the presence of "unusual conditions or extraordinary circumstances[.]"[91]   The Court has explained that when assessing whether such circumstances exist:

---

[88]   Plaintiffs allege Sono International breached the contract in April 2020. 2nd Amend. Compl., ¶ 29.  Sono International argues that, if that date controls, then the limitations period expired in April 2023. Sono Int'l Ltd.'s Op. Br. Mot. Dismiss, at 3. Plaintiffs filed their initial Complaint on March 14, 2023, and amended complaint adding Sono International on July 31, 2024. Compl. (D.I. 1); 2nd Amend. Compl. (D.I. 33).

[89]   *Lavender*, 2017 WL 443696, at *4.

[90]   *Id.* ("This 'discovery rule' . . . applies in three situations. The first situation is one in which the defendant has fraudulently concealed key facts.  The second is where the injury was inherently unknowable.  The third situation is one in which a plaintiff reasonably relies on the competence and good faith of a fiduciary who is alleged to have engaged in wrongful self-dealing.") (citations omitted). Here, Plaintiffs have pleaded facts supporting tolling of the limitations period given their litigation discoveries in New Jersey.  Plaintiffs allege that the full extent of Sono International's domination and control over Sono America—and the factual basis for veil piercing—was not reasonably knowable at the outset and became clearer only through the course of the New Jersey litigation.  Pls.' Answering Br. Mot. Dismiss, at 3, 44, 51–53.

[91]   *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 770 (Del. 2013); *See generally IAC/InterActiveCorp. v. O'Brien*, 26 A.3d 174 (Del. 2011).

> The Court of Chancery must exercise its discretion, after considering all relevant facts. But several factors that could bear on the analysis include: 1) whether the plaintiff had been pursuing his claim, through litigation or otherwise, before the statute of limitations expired; 2) whether the delay in filing suit was attributable to a material and unforeseeable change in the parties' personal or financial circumstances; 3) whether the delay in filing suit was attributable to a legal determination in another jurisdiction; 4) the extent to which the defendant was aware of, or participated in, any prior proceedings; and 5) whether, at the time this litigation was filed, there was a bona fide dispute as to the validity of the claim.[92]

The inquiry often turns on whether a plaintiff was "diligently and productively pursuing his rights before the statute of limitations expired or that he was precluded from doing so based on some unusual and unanticipated change in circumstances."[93]

Unusual circumstances are present here. Plaintiffs didn't delay in pursuing their claims. They timely filed suit in New Jersey in July 2022 against the same parties based on the same operative facts.[94] That action wasn't abandoned; it was voluntarily dismissed only because the Joint Venture Agreement required litigation in Delaware.[95] The dismissal was procedural and undertaken by agreement of the

---

[92] *IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174, 178 (Del. 2011); *Levey*, 76 A.3d at 770.

[93] *Forman v. CentrifyHealth, Inc.*, 2019 WL 1810947, at *9 (Del. Ch. Apr. 25, 2019); *Levey*, 76 A.3d at 770; *IAC/InterActiveCorp*, 26 A.3d at 178.

[94] New Jersey Sup. Ct. Voluntary Dismissal, ¶ 5.

[95] *Id.*, ¶¶ 2, 5. The Court also finds persuasive that "Sono America . . . enforced the JVA's forum selection clause and forced Plaintiffs to split the litigation and file [this] Action." Pls.' Answering

Parties.[96]

Although the Parties' stipulation does not contractually toll Delaware limitations periods, it's relevant to the equitable analysis.[97] The stipulation reflects the Parties' shared understanding that the forum change wasn't intended to prejudice substantive rights. Plaintiffs agreed to dismiss and to refrain from refiling elsewhere while Delaware proceedings were pending, and Defendants were fully aware that Plaintiffs continued to pursue the same claims in another forum. In that context, Defendants' present effort to invoke Delaware's shorter statute of limitations rests not on any failure of diligence by Plaintiffs, but on the procedural consequences of a forum shift Defendants themselves invoked.[98]

Equity does not favor such a result. "Unusual circumstances" may justify relief where a plaintiff diligently pursued its claims and delay resulted from a mutually agreed procedural course rather than one side's strategic or mere inaction.[99]

---

Br. Mot. Dismiss, at 40.

[96] *See generally* New Jersey Sup. Ct. Voluntary Dismissal; Pls.' Answering Br. Mot. Dismiss, at 40.

[97] New Jersey Sup. Ct. Voluntary Dismissal, ¶ 5 ("The Parties agree that, if Plaintiffs re-file this action, in whole or in part, in New Jersey state court, the statute of limitations, statute or repose, or any time-based defenses Defendants may have with respect to the re-filed claims are tolled from the date of the filing of this action (July 27, 2022) until 90 (ninety) days after a final judgment, including the resolution of any appeals, is entered in both Delaware Proceedings.").

[98] Pls.' Answering Br. Mot. Dismiss, 5, 40−41 (D.I. 49).

[99] *Forman v. CentrifyHealth, Inc.*, 2019 WL 1810947, at *9 (Del. Ch. Apr. 25, 2019); *See Levey*,

Plaintiffs' conduct here reflects continuous pursuit of their rights, not delay or neglect. And Sono International cannot plausibly claim prejudice. They have been on notice of these claims since at least July 2022, litigated them against the same plaintiffs, based on the same operative facts, and agreed to the procedural path that resulted in refiling in Delaware. This isn't a case where delay impaired its ability to defend on the merits.

And having found it reasonably conceivable that Sono America operated as the alter ego of Sono International, dismissing Sono International on limitations grounds would replicate precisely the "form over substance" result *IAC/InterActiveCorp* warns against[100]—allowing a defendant alleged to have exercised domination and control to escape liability based on a procedural detour it helped engineer. For present purposes, Plaintiffs have adequately alleged diligence and unusual circumstances sufficient to preclude dismissal on statute-of-limitations grounds.

## C. FLORIS TUTTI INTERNATIONAL AND MR. CHOI HAVE STANDING.

Sono International next contends that Floris Tutti International and Mr. Choi

---

76 A.3d at 770; *IAC/InterActiveCorp*, 26 A.3d at 178.

[100] *IAC/InterActiveCorp*, 26 A.3d at 178.

lack standing to enforce the JVA because they are not signatories.[101]   Sono International argues for the general rule that only contracting parties may sue for breach.[102]   On this basis, they argue dismissal is required.

It's true that Delaware law generally limits enforcement of contracts to the parties who executed them.[103]   But that general rule yields where the contracting parties intended to confer a benefit on a third party and where that intent was a material part of the agreement.   When so:  "(i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract."[104]   In such circumstances, a non-signatory may sue to enforce the contract's terms.

Plaintiffs allege several provisions of the JVA were drafted with their benefit

---

[101]   Sono Int'l's Op. Br. Mot. to Dismiss, at 21–22.

[102]   *Id.*

[103]   *See Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59 (Del. Ch. 2012) (quoting *MetCap Secs. LLC v. Pearl Senior Care, Inc.,* 2007 WL 1498989, at *6 n. 49 (Del. Ch. May 16, 2007)) ("The rationale for this rule is that 'the inability of a party to a contract to fulfill an obligation thereunder cannot serve as a basis to conclude that other entities, *who are not party to the contract,* are liable for that obligation.'"); *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001).

[104]   *Madison Realty Partners 7*, 2001 WL 406268, at *5; *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 271 (Del. 2022).

in mind.[105]   Specifically, Article III.B.3 obligates Sono America to remove lease guaranties on underlying Joint Venture stores, which directly protects Floris Tutti's financial exposure;[106] Article VI.B contains a broad indemnification provision covering obligations that, according to Plaintiffs, extend to Mr. Choi and Floris Tutti for liabilities incurred in furtherance of the venture;[107] and Article VI.H provides that the JVA inures the benefit of successors.[108]

At the pleading stage, these allegations are sufficient to establish standing under the third-party beneficiary exception.  As the Delaware Supreme Court has explained, "When a promised performance is rendered directly to the beneficiary, 'it is presumed that the contract was for the beneficiary's benefit.'"[109]   That presumption is particularly apt where, as here, the alleged beneficiary is exposed to liability the contract purports to allocate or mitigate.  The contractual language of Articles III.B.3, VI.B, and VI.H, coupled with Mr. Choi's alleged direct reliance and damages supports a reasonably conceivable claim that the parties intended to benefit

---

[105]  Pls.' Answering Br. Mot. Dismiss, at 51.

[106]  JVA, Art. III.B.3; Pls.' Answering Br. Mot. Dismiss, at 51.

[107]  JVA, Art. VI.B; Pls.' Answering Br. Mot. Dismiss, at 51; *see generally* 2nd Amend. Compl.

[108]  JVA, Art. VI.H; Pls.' Answering Br. Mot. Dismiss, at 51.

[109]  *Bako Pathology*, 288 A.3d at 271 (citing *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *3 (Del. Ch. Feb. 17, 2004) (quoting 13 *Williston on Contracts* § 37:7 (4th ed.)).

both Mr. Choi and Floris Tutti International. Sono International's standing challenge

therefore fails.

### D. THERE IS NO IMPERMISSIBLE CLAIM SPLITTING.

Sono International contends that this Delaware action must be dismissed

under the anti-claim-splitting rule.[110] That rule is generally followed to prevent a

plaintiff from maintaining duplicative proceedings in multiple forums concerning

the same underlying nucleus of facts.[111] It's meant to avoid burdening defendants

with parallel litigation and prevent the possibility of double recovery.[112]

Here, there is no such risk. The related New Jersey action has been stayed

pending resolution of this case.[113] That procedural posture eliminates any danger of

duplicative litigation or inconsistent judgments. With the New Jersey litigation

stayed and the JVA's forum selection clause pointing to Delaware,[114] there's no

danger of "two bites at the apple."[115] Continuing this proceeding here serves judicial

---

[110] Sono Int'l's Op. Br. Mot. to Dismiss, at 22−24.

[111] *J.L. v. Barnes*, 33 A.3d 902, 917−21 (Del. Super. Ct. 2011); *Goureau v. Lemonis*, 2021 WL 1197531, at *8 (Del. Ch. Mar. 30, 2021).

[112] *Goureau*, 2021 WL 1197531, at *11.

[113] *See generally* New Jersey Sup. Ct. Voluntary Dismissal.

[114] JVA, Art. VI.N.2.

[115] *J.L. v. Barnes*, 33 A.3d at 918 (quoting *Balin v. Amerimar Realty Co.*, 1995 WL 170421, at *4 (Del. Ch. Apr. 10, 1995)) ("[T]he rule is designed to prevent a litigant from getting two bites at the apple.") (cleaned up).

economy and fairness.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reargument is **GRANTED**, and Defendant Sono International Ltd.'s Motion to Dismiss is **DENIED**.

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge*

---

\*   Sitting also by designation of the Chief Justice in the consolidated matter that was docketed in the Court of Chancery—*TFI Tutti LLC, et al. v. Sono America, Inc., et al.,* C.A. No. 2024-1118-PRW (Del. Ch.).  *See* D.I. 41.